The **MANUFACTURERS LIFE INSURANCE COMPANY, Appellant,**

v.

**CAPITOL DATSUN, INC., et al.**

**No. 76–1906.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 3, 1977.

Decided Nov. 11, 1977.

David J. Cynamon, Washington, D. C., for appellant.

William C. Gardner, Washington, D. C., for appellee, Fannie B. Martin.

Before BAZELON, Chief Judge, and TAMM and WILKEY, Circuit Judges.

Opinion for the court filed by TAMM, Circuit Judge.

TAMM, Circuit Judge:

The appeal in this diversity case arises from an action brought by the Manufacturers Life Insurance Company (ManuLife) on October 21, 1975, in the United States District Court for the District of Columbia. ManuLife sought rescission of a $25,000 life insurance policy on the life of Lester Jack Fletcher on the basis of alleged misrepresentations by Fletcher in his application for the policy.[1] The primary beneficiary under the policy, Fannie B. Martin, counterclaimed for the amount of the policy proceeds, which allegedly became due because of Fletcher's death shortly after the filing of the action.[2] ManuLife and Martin filed cross-motions for summary judgment,[3] and, on July 29, 1976, the district court (Gasch, J.) issued a memorandum and order denying ManuLife's motion, granting Martin's motion, and entering judgment for Martin in the amount of the insurance proceeds.[4]

---

1. Record at 1 (Complaint at 1, 3–6).

2. *Id.* at 9.

3. *Id.* at 16, 17.

4. *Id.* at 35, 36.

For the reasons stated below, we agree with the district court's conclusion that ManuLife's action for rescission was barred by the incontestability clause of the policy, and we therefore affirm.

I

Fletcher applied to ManuLife on August 3, 1973, for a life insurance policy in the amount of $25,000. In pertinent part, his application provided as follows:

(1) Except as otherwise provided in the conditional receipt, insurance under any policy issued on this application will become effective only when the first premium is paid while the life insured (and Owner if other than life insured) has (have) no knowledge that the health and occupation of all persons proposed for insurance have not remained as described above and in any attached statements as to health, in which event the policy will become effective as of 12.01 a. m. on its date if issue . . . .[5]

In connection with his application, Fletcher paid ManuLife an amount equal to one month's premium under the policy. He received a conditional receipt, dated August 4, 1973, acknowledging his payment and providing for interim coverage "under the terms of the policy applied for."[6] Such coverage was to take effect on the later of the date on which he signed the application or the date on which he completed the required Medical Evidence Form. The receipt further provided that the interim insurance would terminate either sixty days from its effective date or at the time the actual policy became effective, whichever came first.[7]

On August 20, 1973, ManuLife issued to Fletcher a "Policyholder's Receipt", acknowledging his payment of one month's premium on Policy Number 2,380,925.[8] It thus appears that ManuLife treated Fletcher's original payment as the premium for one month under the policy, as well as the payment for any interim coverage provided under the conditional receipt.

On August 29, 1973, Fletcher completed the required Medical Evidence Form, certifying that the statements and answers therein were "complete and true to the best of [his] knowledge and belief."[9] The representations made by Fletcher in this form, which became part of his application for insurance, provided the basis for ManuLife's action for rescission of the policy.

It was not until November 8, 1973, that ManuLife's underwriters finally approved Fletcher's application.[10] Soon thereafter, it executed the actual policy and delivered it to Fletcher. The policy specifically stated that its Policy Year Date was October 1, 1973, and it also denominated November 16, 1973, as the policy's Date of Issue.[11] This latter designation is significant, because the incontestability clause in the policy provides that "[t]he policy will be incontestable after it has been in force during the life insured's lifetime for *2 years from its date of issue* . . . ."[12]

On October 21, 1975, ManuLife instituted its action for rescission against Fletcher and Capitol Datsun, Inc., original owner and beneficiary of the policy,[13] and later joined Martin, who had been designated primary beneficiary on June 7, 1974.[14] The action contesting the insurance policy was thus instituted less than two years from the policy's specified Date of Issue, but more than two years from its Policy Year Date. The sole issue on this appeal is whether the district court was correct in concluding that the Policy Year Date of October 1, 1973,

---

5. *Id.* at 16 (Application at 2).

6. *Id.* at 17 (Exhibit 7—Conditional Receipt).

7. *Id.*

8. *Id.* at 33 (Exhibit A).

9. *Id.* at 16 (Application's Medical Evidence Form).

10. *Id.* at 17 (Affidavit of Mary Mascard ¶ 4).

11. *Id.* at 16 (Policy at 3).

12. *Id.* (Policy at 7) (emphasis added).

13. *Id.* at 1.

14. *Id.* at 3 (Policy).

controlled the commencement of the period of contestability, and that ManuLife's action for rescission was therefore barred.

## II

■ When an insurance company chooses to enter into an insurance contract in a jurisdiction, it impliedly consents to all reasonable conditions and regulations imposed on it by that jurisdiction, including any statutory incontestability provisions. *Bolick v. Prudential Insurance Co. of America,* 249 F.Supp. 735, 738 (D.S.C.1966); *see Lafayette Insurance Co. v. French,* 59 U.S. (18 How.) 404, 407, 15 L.Ed. 451 (1855). Thus, any provisions required by statute to be included in an insurance policy prevail over inconsistent terms in the policy as written by the company. *Bolick v. Prudential Insurance Co. of America,* 249 F.Supp. at 738 & n.9; *American Life Association v. Rogers,* 281 P.2d 183, 185 (Okla.1955); G. Couch, Cyclopedia of Insurance Law § 72:22 (2d ed. 1968).

In the District of Columbia, there is a statute which specifically governs incontestability clauses in life insurance policies. D.C.Code § 35–703(3) (1973). In pertinent part, this statute provides:

No policy of life insurance . . . shall be issued or delivered in the District . . . unless the same shall contain in substance the following:

> .    .    .    .    .

(3) A provision that, except as otherwise expressly provided by law, the policy shall constitute the entire contract between the parties and shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than *two years from its date* . . .. (emphasis added)

The policy's "date" referred to in the statute is nowhere specifically or impliedly defined. ManuLife contends that its incontestability clause, which commences with the Date of Issue specified in the policy, is consistent with the statutory mandate.[15]

Martin, on the other hand, contends that the "date" of the policy, as used in the statute, corresponds to the earlier Policy Year Date.[16]

■ In cases in which the term "date" or "date of issue" has not been specifically defined in insurance statutes or policy provisions, courts have generally interpreted it as meaning the effective date of the policy in question or the time at which the risk commenced. *Franklin Life Insurance Co. v. Bieniek,* 312 F.2d 365, 369 (3d Cir. 1962); *Lloyd v. Franklin Life Insurance Co.,* 245 F.2d 896, 899–900 & n.3 (9th Cir. 1957); *Jefferson Standard Life Ins. Co. v. Wilson,* 260 F. 593, 595 (5th Cir. 1919); *cf. State Mut. Life Assur. Co. v. Stapp,* 72 F.2d 142, 144–45 (7th Cir. 1934) (in which the suicide and incontestability clauses required by statute to run from the policy's "date" were held to run from the time at which "the insurer is compensated for assuming the risk, notwithstanding it assumes no liability until subsequently premium payment and delivery occur"). Defining the word "date" in an insurance contract or statute as the effective date of the policy promotes the purpose of statutory incontestability requirements: to protect the insured by forbidding the insurer's unilateral "extension of a contestable clause for a period greater than two years from the date of the attachment of the risk of loss." *American National Insurance Co. v. Motta,* 404 F.2d 167, 169 (5th Cir. 1968); *see Miccolis v. Mutual Ben. Health & Accident Ass'n,* 115 F.2d 579, 581 (7th Cir. 1940), *cert. denied,* 312 U.S. 683, 61 S.Ct. 551, 85 L.Ed. 1121 (1941). We therefore hold that the word "date" in section 35–703(3) refers to the effective date of a life insurance policy. We now turn to the question of whether the policy here became effective on the Policy Year Date or the Date of Issue. To make this determination, we must look to the provisions of the contract, *Schwartz v. Northern Life Ins. Co.,* 25 F.2d 555, 557 (9th Cir.), *cert. denied,* 278 U.S. 628, 49 S.Ct. 29, 73 L.Ed. 547 (1928), and to the actions and intent of the

---

**15.** Brief for Appellant at 12.

**16.** Brief for Appellee at 5.

parties in relation to those provisions, *Franklin Life Insurance Co. v. Bieniek,* 312 F.2d at 369.

■ In this case, it is clear from the policy itself that its effective date was the Policy Year Date, October 1, 1973. Premiums were paid on that date and monthly thereafter, as shown by the Policyholder's Receipts sent to the insured; [17] policy anniversaries were measured from that date; [18] and, finally, that date determined loan and cash values on the policy, dividends, paid-up insurance, extended insurance, and grace periods.[19] In *Horwitz v. New York Life Ins. Co.,* 80 F.2d 295, 299 (9th Cir. 1935), the court interpreted the "date of issue" required by statute as being synonymous with the anniversary date of the policy, reasoning that "[i]t determines every feature of the insurance contracted for that can be affected by a date." Likewise, in this case, every provision of the insurance policy that must be reckoned from a definite time is measured from the Policy Year Date, except the incontestability and suicide clauses. Under such circumstances, the effective date of the policy, the "date" referred to in section 35–703(3), must be construed as the Policy Year Date of October 1, 1973. When this date is read into the insurance policy, it is plain that ManuLife's action for rescission was barred.

■ Even if it were not clear from the provisions of the policy standing alone that it became effective on its Policy Year Date, the dealings between the parties during the application process show that the policy should be construed as coming into effect prior to the Date of Issue or the underwriting decision. It is well settled that "in case of ambiguity that construction of the policy will be adopted which is most favorable to the insured." *Mutual Life Insurance Co. v. Hurni Packing Co.,* 263 U.S. 167, 174, 44 S.Ct. 90, 91, 67 L.Ed. 476 (1923); *accord,*

*Old American Insurance Co. v. Tucker,* 223 A.2d 334, 336 (D.C.1966). In this case, since the application and conditional receipt were also parts of the contractual relationship leading to the execution of the formal policy,[20] they must be examined to determine whether their provisions on effectiveness are reasonably susceptible of different interpretation or more than one meaning. *Malloy v. New York Life Ins. Co.,* 103 F.2d 439, 445 (1st Cir.), *cert. denied,* 308 U.S. 572, 60 S.Ct. 86, 84 L.Ed. 480 (1939).

■ The provision of the application referring to effectiveness of the policy is set forth above. As pointed out by the district court, the clause could be read as providing for effectiveness either upon payment of the first premium or upon actual issuance of the policy.[21] In interpreting a similarly worded provision in an insurance application, Judge Learned Hand applied the standard of the reasonably prudent man, and stated:

> [T]he ordinary applicant who has paid his first premium and has successfully passed his physical examination, would not by the remotest chance understand the clause as leaving him uncovered until the insurer at his leisure approved the risk; he would assume that he was getting immediate coverage for his money.

*Gaunt v. John Hancock Mut. Life Ins. Co.,* 160 F.2d 599, 602 (2d Cir.), *cert. denied,* 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858 (1947); *see Malloy v. New York Life Ins. Co.,* 103 F.2d at 446. The insurance company which writes the policy and accompanying documents has the power to articulate clearly the meaning of the terms and provisions used. Any confusion which results from the wording chosen by the company will be resolved in favor of the insured. Thus, the ambiguous phraseology of the application in question here must be construed as providing that the insurance policy would become

---

**17.** Record at 33 (Exhibits A, B, C, D); *see id.* (Exhibit H).

**18.** *Id.* at 16 (Policy at 5).

**19.** *Id.* (Policy at 6, 8, 9).

**20.** The policy specifically incorporates the application, *id.* at 16 (Policy at 5); and the application incorporates the conditional receipt, *id.* (Application at 2).

**21.** *Id.* at 35 (Memorandum at 9).

effective upon payment of the first premium. Because ManuLife applied the insured's earlier payment as the premium due on October 1, 1973, that date must be viewed as the effective date of the policy, the "date" referred to in section 35–703(3).

The conditional receipt in this case also contains ambiguous provisions.[22] While providing for interim insurance from the time of completion of the Medical Evidence Form until the "effective date" of the policy, it nowhere explains the meaning or method of determination of that effective date. Furthermore, it provides for coverage under a policy not yet in existence, a provision which has been found sufficient in itself to constitute a prima facie ambiguity. *American National Insurance Co. v. Motta*, 404 F.2d at 168. ManuLife contends that, because the underwriting decision was not made until November, any coverage provided under the conditional receipt lapsed on October 28, 1973, which was sixty days after the completion of the Medical Evidence Form.[23] However, the money paid by the insured in connection with his application was credited, as of October 1, as the first month's premium under the policy, rather than refunded at the alleged lapse of the interim coverage.[24] This action by ManuLife is another example of the inherent ambiguity in the meaning of "effective date", as used in the conditional receipt. Again, any confusion in the meaning of terms must be resolved in favor of the insured, and we therefore construe the terms of the conditional receipt and the actions of the parties relating thereto as manifesting an intent that the policy become effective on October 1, 1973.

### III

In summary, we interpret the "date" of an insurance policy, as that term is used in section 35–703(3), as meaning the effective date of that policy. Whether looking merely at the policy itself, or at the policy in conjunction with the application and conditional receipt, we conclude that the effective date of the policy at issue here was its Policy Year Date of October 1, 1973. Because the statutory incontestability clause prevails over any inconsistencies in the policy clause as written, the two-year contestable period in ManuLife's policy must be read as commencing on October 1, 1973, rather than on November 16, 1973, and as expiring prior to the filing of the action for rescission on October 21, 1975. We therefore affirm the district court's granting of summary judgment for the beneficiary.

Having decided the particular controversy between the parties, we feel compelled to address the overall problem presented by this appeal. Both appellant and appellee have cited many cases involving the interpretation of insurance statutes and policy provisions. The sheer quantity of such cases illustrates the general failure of legislatures and insurance companies to draft their statutes and policies precisely, articulately, and unambiguously. Legislatures should endeavor to provide clear and detailed definitions for crucial statutory terms, thereby minimizing both uncertainty and litigation. Likewise, insurance companies should by now be cognizant of the judicial attitude toward ambiguity and vagueness in insurance contracts; and it is within their power to construct policies, applications, and receipts in compliance with statutory mandates and free of internal inconsistency. If insurance statutes and insurance contracts were precise and unambiguous in their provisions, then suits such as the one from which this appeal arose would no longer clog the already crowded dockets of the courts.

*Affirmed.*

---

**22.** *Id.* at 17 (Conditional Receipt—Exhibit 7).

**23.** Brief for Appellant at 6–9, 18.

**24.** Counsel for appellant stated at oral argument that, although the payment acknowledged by the conditional receipt was compensation to ManuLife for interim coverage, it would have been refunded to the insured in the event of an adverse underwriting decision.