ESTATE OF Ronald L. WIGLEY, By and Through its Personal Representative, Eleanor HOLASEK and Eleanor Holasek, individually, Appellant,

v.

GREAT–WEST LIFE ASSURANCE COMPANY, Richard Mikkelson, Respondents.

No. C6–86–579.

Court of Appeals of Minnesota.

Nov. 25, 1986.
Review Denied Jan. 16, 1987.

Dennis Patrick Moriarty, Lee Vickerman, Jaspers, Moriarty and Walburg, P.A., Shakopee, for Estate of Ronald L. Wigley, by and through its Personal Representative, Eleanor Holasek and Eleanor Holasek, individually.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for Great-West Life Assur. Co.

Robert T. Stich, Lasley, Gaughan, Stich & Angell, P.A., Minneapolis, for Richard Mikkelson.

Heard, considered and decided by PARKER, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

Appellant, Estate of Ronald L. Wigley and Eleanor Holasek appeal the judgment of the trial court in favor of respondents Great-West Life Assurance Company and its agent, Richard Mikkelson. Appellant seeks to recover the proceeds of a life insurance policy issued by Great-West and allegedly in force at the time of Wigley's death. The trial court held that the parties intended that the insurance policy on Wigley's life would not be effective until Great-West actually received a check from Con-

necticut Mutual for the first premium, and therefore, no payment was made before Wigley's death. We reverse.

## FACTS

Ronald Wigley had purchased various life insurance policies from Richard Mikkelson over a period of several years. Mikkelson, an agent for both Great-West and Connecticut Mutual Assurance companies, contacted Wigley on April 5, 1984, to discuss changing Wigley's insurance from Connecticut Mutual to Great-West. The two men met, and Wigley executed a Great-West insurance application and a Temporary Life Insurance Agreement. Wigley provided Mikkelson with his current medical information and signed the application in blank. The application provided:

I declare and agree that * * * (5) unless otherwise provided in the Temporary Life Insurance Agreement * * * any policy issued on this application shall not take effect until delivered and the first premium paid to the Company * * *.

Mikkelson informed Wigley that he had the option to pay the Great-West premium by check, but suggested that Wigley make the payment for the new policy by borrowing money on his Connecticut Mutual Policy. Wigley agreed. Mikkelson then completed the Great-West insurance application and forwarded it to Great-West for approval. The Temporary Life Insurance Agreement was never completed.

On April 20, 1984, Great-West issued an insurance policy to Wigley for $70,000.00, naming appellant, Eleanor Holasek, as the beneficiary. The premium from the date of issuance, April 20, 1984, for the first year was $1,304.00. Mikkelson received the policy from Great-West on May 9, 1984, and met with Wigley on May 11, 1984. At this meeting, Mikkelson delivered the policy to Wigley, who then executed a Request for Policy Loan to transfer funds from Connecticut Mutual to Great-West to pay for the first premium. At the same time he executed a cash surrender form to cancel his Connecticut Mutual policy. Wigley gave both forms to Mikkelson to forward to Connecticut Mutual. Mikkelson testified that he was aware at that time that the Connecticut Mutual policy contained a sufficient loan and cash surrender value to pay for the Great-West premium. The loan and cash surrender proceeds were to be sent directly to Great-West in the form of a check drawn to its order. At trial, Mikkelson testified that he informed Wigley that the Great-West policy would not be effective until Great-West actually received the check for the premium from Connecticut Mutual. He further testified, however, that he had recommended the policy loan procedure "to be sure that the new insurance would be in force before the old insurance would be canceled."

Wigley died suddenly on May 18, 1984. Connecticut Mutual issued its check to Great-West on May 23, 1984. Mikkelson received the check on behalf of Great-West on May 24, 1984. He then contacted the general agent for Great-West, who confirmed that the policy had not yet become effective, whereupon Mikkelson returned the check to Connecticut Mutual.

On December 9, 1985, the trial court heard the case without a jury. In its findings of fact, the court stated:

Wigley understood, * * * and the parties intended, that coverage under the Great-West policy would not be effective until Great-West received the Connecticut Mutual check.

Further, the trial court found:

[n]o premium payment of any kind was tendered to Great-West Life prior to the death of Ronald Wigley on May 18, 1984.

The court held that Wigley failed to pay the first premium required by the insurance application, and therefore, no policy of insurance issued by Great-West was in force at the time of Wigley's death.

## ISSUES

1. Does the evidence support the finding that the parties intended that the insurance policy would be effective only upon receipt of Connecticut Mutual's check?

2. Does the evidence support the finding that Wigley had not tendered the first premium to Great-West before his death?

## ANALYSIS

■ On an appeal from judgment where no motion for a new trial has been made, the only issues on appeal are whether the trial court's findings of fact are supported by the evidence and are not clearly erroneous, and whether the conclusions of law and judgment are sustained by the findings of fact. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1985). Appellant contends that the trial court erred in its findings and conclusions.

## I.

Respondents claim that the policy never went into effect because there was a condition precedent to the contract which had not been fulfilled at the time of Wigley's death—that Great-West actually receive the check for the first premium from Connecticut Mutual. They note that Mikkelson testified that although he had delivered the Great-West policy to Wigley and had collected the loan and cancellation forms to pay for the first premium at the May 11th meeting, he had also informed Wigley at this time that the policy would not be effective until the company actually received Connecticut Mutual's check.

■ Under Minnesota law, a contract of insurance becomes effective when the parties intend it to become effective. The legal relationship between an insured and an insurance company is contractual. *Rasmussen v. Prudential Insurance Company*, 277 Minn. 266, 269, 152 N.W.2d 359, 362 (1967). The court determines the parties' intent by reference to the written contract. Appellant asserts that the contract's terms do not require that Great-West actually receive the check from Connecticut Mutual. We agree.

The contract provides:

any policy issued on this application shall not take effect until delivered and the first premium paid to the Company

\* \* \* \* \* \*

PREMIUMS

*Payment* Premiums are to be paid either to the company's United States Headquarters or to one of its authorized agents. A receipt for payment will be signed by the Company Secretary and its authorized agent. The first premium may be paid on delivery of this policy. Any premium not paid by its due date will be an unpaid premium. \* \* \*

The contract specifically restricts Mikkelson's authority to modify the contract's terms:

This policy and the application for it form the entire contract. \* \* \* After issue, amendments agreed upon in writing are part of the contract. \* \* \* Only the President, a Vice-President, the Secretary or the Actuary of the Company can change or waive any provisions of the policy.

Moreover, pursuant to Minnesota law, the entire contract of insurance is required to be written. Minnesota Statute § 61A.05 provides:

Every policy of insurance issued or delivered within this state on or after the first day of January, 1908, by any life insurance corporation doing business within the state, shall contain the entire contract between the parties.

Every policy which contains a reference to the application, either as a part of the policy or as having any bearing thereon, shall have a copy of such application attached thereto or set out therein.

Minn.Stat. § 61A.05 (1984). *See also* Minn. Stat. § 61A.03 (1984) (providing that an insurance contract without this clause is invalid). The Minnesota Supreme Court has stated that this provision was designed primarily to leave a complete written record of the insurance transaction when the insured dies. *Coughlin v. Reliance Life Insurance Co.*, 161 Minn. 446, 451, 201 N.W. 920, 922 (1925).

It is clear that the written contract of insurance issued by Great-West was intended to be the entire contract between the parties. The contract is not ambiguous. Its terms clearly state when it will go into effect—when it is delivered and the first premium is paid to the company or to its authorized agent. The parties having agreed in writing that the policy should not be in force until its delivery and payment of the first premium, it is an enforceable contract upon the happening of these events.

## II.

Respondents claim that the insurance contract was ineffective because Wigley never fulfilled the condition precedent requiring payment of the first premium. In *Wanshura v. State Farm Life Insurance Company*, 275 N.W.2d 559, 565 (Minn. 1978), the supreme court held that this condition precedent required only that tender of payment be made.

An excellent explanation of the concept of tender of premiums is contained in Couch, *Cyclopedia of Insurance Law*. The treatise defines "tender" as:

> an unconditional and timely offer by a proper person actually to pay in lawful medium a sum not less than the amount actually due, made at a proper place and to a proper person. Such a tender, whether accepted by the insurer or not, precludes the insurer from maintaining that a forfeiture has arisen by reason of nonpayment of the particular premium * * * as to which tender was so made, and is as effectual to preserve rights as actual payment. * * * The insured, in order to make an effective tender, must make an unqualified offer to pay the amount due.

6 *Couch on Insurance 2d*, §§ 31:29–:34, at 44–45 (Rev. ed. 1985). If the policy does not require that the premium be paid in cash, an agent may accept, as payment of the premium, an order on a third person to pay the amount due. *See id.* § 31:98, at 129. Once the insurer has agreed to collect the premium payment from the third party, no forfeiture for nonpayment can be asserted if the third party has neither refused nor hesitated to pay on demand—even where there is a tender of the amount due after the death of the insured. *See id.* at 131.

In this case, the Great-West policy did not require that the first premium be paid in cash. The agent told Wigley that he could pay the first premium by taking out a loan on his existing policy and having Connecticut Mutual send the proceeds directly to Great-West in a check drawn to its order. Wigley agreed, executed the proper forms, and delivered them to Mikkelson. Mikkelson accepted the forms, sent them to Connecticut Mutual and awaited the check. Since Great-West, through Mikkelson, accepted an order on a third person (actually the entity, Connecticut Mutual) to pay the first premium, we hold that Wigley properly tendered payment of the first premium.

## DECISION

Tender of the premium satisfies the requirement in an insurance policy that it takes effect upon payment of the first premium. The insurance contract provided that it would be effective upon delivery and payment of the first premium. We hold that under *Wanshura*, Wigley's act of executing the request for a policy loan to pay the first premium, which was accepted by Great-West's agent, constituted tender of the first premium. Therefore, Wigley paid the first premium and the insurance contract was in force at the time of his death.

The judgment of the trial court is reversed.