**Jean M. HAMMER, Respondent,**

v.

**INVESTORS LIFE INSURANCE COMPANY OF NORTH AMERICA, Appellant.**

**No. CX–90–2386.**

Court of Appeals of Minnesota.

July 23, 1991.

Review Denied Sept. 25, 1991.

Jeremy S. Steiner, Vesely, Miller & Steiner, Hopkins, for respondent.

Timothy J. Manahan, Burton D. Anderson & Assoc., Bloomington, for appellant.

Considered and decided by LANSING, P.J., and RANDALL and PETERSON, JJ.

## OPINION

RANDALL, Judge.

Investors Life Insurance Company of North America (appellant) appeals from a jury verdict finding that decedent insured did not make willful and intentional misrepresentations on a life insurance application.

Appellant contends the trial court made erroneous evidentiary rulings, and further erred by submitting a question of law to the jury. We reverse and remand for a new trial.

## FACTS

On October 9, 1985, respondent's late husband applied for life insurance with appellant as the insurer. The application contained two questions which give rise to this appeal. Those questions were number 5(g): "Do you currently smoke cigarettes?"; and number 5(h): "Have you smoked any cigarettes during the last 12 months?" The decedent answered both questions, "no."

▪ Appellant contends that if decedent had answered "yes" to the smoking questions, it would not have issued a nonsmoker policy, but would have considered only a smoking policy, and at higher premium rates.[1] Appellant's underwriting manager testified that decedent's smoking habits before October 9, 1985, were important and material, but smoking habits after October 9, 1985, would not affect either his right to the policy or premium costs.

Decedent received a Temporary Insurance Agreement (TIA) effective October 9, 1985. The TIA was to remain effective for 60 days or until the life insurance policy applied for was issued, which ever came first. The insurance application was approved and a nonsmoker policy was issued with a "date of issue" of November 1, 1985.

On October 22, 1987, decedent's body was discovered hanging in his work van. The cause of death was accidental strangulation. The toxicology section in the autopsy report indicated decedent had traces of nicotine in his blood at the time of death. A fellow employee, Michael Miller, cleaned out the van after the body was removed. The van was used solely by decedent, and Miller found cigarettes in it.

On November 17, 1987, respondent submitted to appellant a "Proof of Death—

1. Material misrepresentation of a required disclosure on an application allows an insurer to void a life insurance policy, whether or not the misrepresentation relates to the cause of death of the insured. *Howard v. Aid Ass'n. for Lutherans,* 272 N.W.2d 910, 912–13 (Minn.1978).

Claimant's Statement." This form contained a provision authorizing medical providers to release information regarding decedent's treatment. On December 9, 1987, appellant sent an investigator to respondent's home. The investigator had respondent sign another authorization for release of records.

The investigator obtained medical reports on decedent from a Dr. Robert Thomasson pertaining to a physical examination of decedent which had taken place on January 21, 1987. As part of that examination, Dr. Thomasson obtained a smoking history from decedent. Decedent indicated to Dr. Thomasson that he quit smoking one year prior to the examination. That would put decedent quitting smoking tobacco around January or February of 1986, which is 14–15 months after October of 1984. On October 9, 1985, decedent had stated on his own application that he had not smoked cigarettes in the last 12 months.

On March 23, 1988, appellant sent a letter to respondent denying her claim on the policy. Appellant maintained it was entitled to rescind the policy because decedent had misrepresented his cigarette smoking history on the application.

At trial, appellant sought to introduce decedent's medical records relating to the January 21, 1987, examination and the testimony of Dr. Thomasson regarding decedent's statement on his smoking history. Respondent objected to this evidence as privileged and was sustained by the trial court. Appellant also sought to introduce the autopsy report; testimony of Michael Miller as to part of decedent's smoking history; and an insurance application to another company completed by decedent in 1984. The trial court excluded this evidence as irrelevant.

## ISSUES

1. Was Investors Life Insurance Company of North America barred by Minn. Stat. § 61A.03, subd. 1(c)(1988) from contesting Jean M. Hammer's claim for insurance benefits?

2. Did the trial court err by applying Minn.Stat. § 595.02, subd. 1(d)(1988) to exclude medical records and testimony from a physician regarding decedent's smoking history?

3. Did the trial court abuse its discretion in ruling inadmissible Investor Life's rebuttal evidence on decedent's smoking history?

4. Did the trial court err by submitting to the jury the issue of ambiguity in the language of the life insurance contract?

## ANALYSIS

### I.

*Incontestability*

Prior to trial, respondent moved for summary judgment maintaining that, as a matter of law, the incontestability waiting period set out in Minn.Stat. § 61A.03, subd. 1(c)(1988) had elapsed on October 9, 1987, prior to her husband's death on October 27, 1987. The trial court denied her motion and ruled that November 1, 1985, the policy "date of issue" was the day on which the two year period began to run, and therefore, since decedent died before November 1, 1987, the insurance company had a chance to contest the issuance of the policy based on the alleged misrepresentations in the application.

■ Although denial of summary judgment is not ordinarily appealable, it may be reviewed as part of an appealable judgment. *Peterson v. Brown,* 457 N.W.2d 745, 748 (Minn.App.1990), *pet. for rev. denied* (Minn. Aug. 23, 1990).

Minn.Stat. § 61A.03, subd. 1(c) provides in part:

Subd. 1. **Generally.** No policy of life insurance may be issued in this state or by a life insurance company organized under the laws of this state unless it contains the following provisions:

\* \* \* \* \* \*

(c) **Entire Contract.** A provision that the policy constitutes the entire contract between the parties and *is incontestable after it has been in force during the lifetime of the insured for two years from its date,* except for nonpayment of

premiums and except for violations of the conditions of the policy relating to naval and military services in time of war; * * *.

(Emphasis added).

■ Respondent argues the TIA is defective under Minnesota Law and therefore should be merged with the insurance policy. Respondent contends the TIA does not have a reference to the two year incontestability statute, and is therefore defective. Merging the TIA with the policy would allow respondent to argue that the effective date of coverage under the policy is October 9, 1985, not November 1, 1985, and thus appellant would not be able to reach contestability on the merits.

Requiring a clause stating that the TIA would be incontestable after being in force for two years is not a rational application of Minn.Stat. § 61A.03, subd. 1(c). The TIA, by its terms, would expire under *all* circumstances after 60 days. Reciting the two year incontestability language in the TIA would be extraneous language. "When interpreting a statute, it must be presumed the legislature did not intend to produce an absurd result." *Nash v. Allen,* 392 N.W.2d 244, 248 (Minn.App.1986), *pet. for rev. denied* (Minn. Oct. 22, 1986). The TIA was a separate agreement between decedent and appellant and, although connected to, is not identical to the later issued insurance policy.

■ Respondent also argues the TIA and the policy should be merged because the "date of issue", which is the effective date of the policy by its own terms, is "arbitrarily determined." We find the date any policy is to become effective is set "arbitrarily."

Under Minnesota law, a contract of insurance becomes effective when the parties intend it to become effective. The legal relationship between an insured and an insurance company is contractual. * * * The court determines the parties' intent by reference to the written contract.

*Estate of Wigley v. Great–West Life Assur. Co.,* 396 N.W.2d 664, 666 (Minn.App. 1986), *pet. for rev. denied* (Minn. Jan. 16,

1987) (citation omitted). We look to the record to determine when the parties intended for the two year incontestability waiting period to begin.

Minn.Stat. § 61A.03, subd. 1(c) provides that the policy must contain language setting out that the policy will be incontestable two years after "its date." No Minnesota decision has defined what is meant by the use of "its date" in the statute. In an instructive case, *Manufacturers Life Ins. Co. v. Capitol Datsun, Inc.,* 566 F.2d 354 (D.C.1977), the federal court of appeals considered D.C.Code § 35–703(3)(1973), a District of Columbia statute similar to Minn.Stat. § 61A.03, subd. 1(c). The statute provides in part:

No policy of life insurance * * * shall be issued or delivered in the District * * * unless the same shall contain in substance the following:

\* \* \* \* \* \*

(3) A provision that, except as otherwise expressly provided by law, the policy shall constitute the entire contract between the parties and *shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than two years from its date * * *.*

*Manufacturers Life,* 566 F.2d at 357 (emphasis added).

The federal appellate court reasoned that where "date" or "date of issue" has not been specifically defined by insurance statutes, courts have generally interpreted it as meaning the "effective date" of the policy in question or the time at which risk of loss by the insurer attaches. *Id.* The court went on to hold that to determine the "effective date" of a policy, courts must look to the provisions of the insurance contract itself. *Id.*

The approach discussed above is consistent with general Minnesota insurance principles. A contract of insurance becomes effective when the parties intend it to become effective. *Estate of Wigley,* 396 N.W.2d at 666. Prior to the effective date of the policy, the insurer assumes no risk of loss. Applying the incontestability wait-

ing period from the effective date protects both insured and insurer. Also, the intention of the parties is determined by looking to the terms of the contract itself. *Id.*

■ When language of an insurance policy is unambiguous, it must be given its plain ordinary meaning; unambiguous language will not be construed in a manner more favorable to finding coverage. *Fireman's Ins. Co. v. Viktora,* 318 N.W.2d 704, 706 (Minn.1982).

The policy terms provide that the policy's "date of issue" is November 1, 1985. The language of the policy sets out that the "effective date" of the policy would be the "date of issue", i.e., November 1, 1985. The policy is explicit. It provides the "date of issue" will be used to determine monthly anniversary days, policy months, policy years, and policy anniversaries. The minimum initial premium is due on the "date of issue." Finally, the policy provides that the incontestability waiting period will be measured from the "date of issue." All the important events are measured from a date defined within the policy. That day was agreed to by decedent. We find the policy unambiguous. The two-year contestability period expired on November 1, 1987, and since decedent died prior to that date, appellant has a right to contest the claim of decedent's widow based on an alleged smoking history misrepresentation by decedent.

## II.

*Waiver of Physician–Patient Privilege*

■ Appellant contends the trial court improperly excluded the medical records and Dr. Thomasson's testimony in regard to decedent's statements about his smoking history made during his January 21, 1987, physical examination. The trial court relied on Minn.Stat. § 595.02, subd. 1(d) (1988) to exclude the decedent's medical records and Dr. Thomasson's testimony. Minn.Stat. § 595.02, subd. 1(d) provides:

A licensed physician or surgeon * * * shall not, without the consent of the patient, be allowed to disclose any information or any opinion based thereon which

the professional acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity; *after the decease of the patient, in an action to recover insurance benefits, where the insurance has been in existence two years or more,* the beneficiaries shall be deemed to be the personal [representatives] of the deceased person for the purpose of waiving the privilege, *no oral or written waiver of the privilege shall have any binding force or effect except when made upon the trial or examination where the evidence is offered or received.*

(emphasis added).

Appellant argues the Minnesota Supreme Court's decision in *Howard v. Aid Ass'n. for Lutherans,* 272 N.W.2d 910 (Minn.1978) supports its position that decedent and respondent had contractually waived the protections of Minn.Stat. § 595.02, subd. 1(d). We find *Howard* controlling.

The *Howard* court found that authorizations for medical records executed during an application process are an effective waiver of the physician-patient privilege. The authorization executed by the beneficiary-claimant in *Howard* was also found to waive the protection of the privilege. The decedent in *Howard* died 15 months after the effective date of the policy. While recognizing that the statute provides limits on the conclusiveness of waivers, *the Howard court held the statute was not available to negate the waiver because the life insurance policy had not been in existence for more than two years.*

Here, decedent passed away before the policy had been in effect for two years. The statute provides that the right to invoke the privilege passes to an insurance beneficiary *only* if the policy has been in existence two years or more. Minn.Stat. § 595.02, subd. 1(d).

The authorizations for medical records executed by decedent and respondent operate to waive the physician-patient privilege. The October 10, 1985, authorization executed by decedent provided:

I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person, that has any records or knowledge of me or my health, or of my spouse or dependent children if proposed for insurance, to give to the Investors Life Insurance Company of North America any such information.

The November 17, 1987, and December 9, 1987, authorizations by respondent provided respectively:

■ I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company or other organization, institution or person who examined or has any record or knowledge of Sheldon Lee Hammer to furnish to Life Insurance Company of North American or INA Life Insurance Company, or a representative thereof, any and all information with respect to any illness, medical history, consultation, prescriptions or treatment, and copies of all hospital or medical records. A photostatic copy of this authorization shall be considered as effective and valid as the original.

■ Solely to assist the Investors Life Ins. Co. of North American in administering an insurance claim, I hereby authorize any physician, hospital, pharmacy, employer or other person or organization possessing medical information concerning:

Sheldon Lee Hammer

Deceased 10–22–87   DOB 11–6–34

to permit the above named insurance company or its representative including Equifax Services, to view, copy, be furnished copy or be given details of all such medical information including drug, alcohol or psychiatric treatment, unless specifically limited above or below.

These authorizations are sufficient to waive the physician-patient privilege. In *Howard,* the Minnesota Supreme Court held that the authorizations there were effective to waive the privilege. *Howard,* 272 N.W.2d at 913. While the *Howard* opinion does not set out the exact language of the authorizations in question, the authorizations are found in the bound volumes of briefs maintained by the State Law Library. *See* Cases and Briefs, Supreme Court of Minnesota, 272 N.W.2d 748–914, Vol. 1456.

In *Howard,* the decedent executed the following two authorizations:

■ I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company or other organization, institution or person, that has any records or knowledge of me or my health, to give AID ASSOCIATION FOR LUTHERANS, Appleton, Wisconsin, 54911, any such information. A reproduction of this authorization shall be valid as the original.

■ I hereby authorize any physician or other person who has attended or examined me to disclose any pertinent knowledge or information thereby required by him to Aid Association for Lutherans.

Further, the beneficiary in *Howard* also executed this authorization:

I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person, that has any records or knowledge of the insured or his/her health, to give AID ASSOCIATION FOR LUTHERANS, Appleton, Wisconsin, 54919, any such information. A reproduction of this authorization shall be valid as the original.

There is no legal distinction between the authorizations found to waive the physician-patient privilege in *Howard* and the authorizations in this case. The trial court erred in excluding the decedent's medical records and the testimony of Dr. Thomasson. The exclusion of this evidence which the fact finder could have found material necessitates a new trial.

## III.

### Evidentiary Challenges

Appellant challenges other evidentiary rulings made by the trial court. Appellant alleges error in the exclusion of Michael Miller's testimony, the autopsy report with the toxicology results, and a life insurance application completed by decedent in October of 1984 for International Order of Foresters. Evidentiary rulings on materiality, foundation, remoteness, relevancy or cumulative nature of evidence are committed to the sound discretion of the trial court and will only be set aside for abuse of discretion. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983).

■ Appellant argues that Michael Miller's testimony regarding his knowledge of decedent's smoking practices is relevant to show that decedent misrepresented his smoking history prior to October 9, 1985. We disagree. The only factual issue in this case was whether decedent wilfully or intentionally misrepresented his cigarette smoking history prior to October 9, 1985. Michael Miller was unacquainted with decedent prior to July 1986. Miller's testimony relates only to decedent's cigarette smoking *after* July 1986. Appellant's underwriting manager testified whether or not decedent smoked cigarettes after October 9, 1985, would have no effect on the insurance policy. Miller's testimony normally would have no relevant value. However, to buttress her case, respondent offered evidence that the decedent never smoked cigarettes from October 1984, up to the time of his death in 1987. Since respondent was allowed to present evidence of decedent's smoking habits up to the time of his death, she opened the door to appropriate rebuttal evidence. Miller's testimony should have been allowed in on the basis of fair rebuttal.

■ Appellant also offered the autopsy report's toxicology findings. The trial court excluded the evidence by ruling that although the record was adequately identified as a business record (thus excepted from the hearsay exclusion), there was no foundation for the findings and opinions offered within the report. The trial court's ruling was error. *See, e.g., State v. Morrison*, 437 N.W.2d 422 (Minn.App.1989), *pet. for rev. denied* Minn. April 26, 1989) *cert. denied* — U.S. —, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989). Once the trial court found the report to be a properly kept medical business record, the foundation of the report's contents is established. The weight to be given that report by the factfinder is subject, obviously, to plaintiff's right to present contradictory evidence and otherwise negate the value to be given the report. But weight is not the same thing as admissibility. The report was admissible on foundation grounds, if relevant, and the toxicology findings, similar to Miller's testimony, had some limited relevance as proper rebuttal.

■ Finally, appellant offered an International Order of Foresters (IOF) life insurance application completed by decedent in October of 1984. In that application, decedent also answered "no" to a question asking if he had smoked cigarettes in the twelve months prior to October 1984. Respondent concedes that decedent misrepresented his smoking history on that IOF life insurance application.

Appellant argues the IOF application should be admissible because it establishes a "habit" in accordance with Minn.R.Evid. 406. Rule 406 does not define what constitutes a "habit." In *Rusciano v. State Farm Mut. Auto Ins. Co.*, 445 N.W.2d 271, 274 (Minn.App.1989), this court found that the trial court had not abused its discretion when it made an evidentiary ruling that appellant had failed to establish a "habit" in that case. In *Rusciano*, the appellant wanted to put on two witnesses who on prior occasions had seen respondent, who was hit by a car in the case then at bar, playing chicken with cars. *Id.* If multiple instances of conduct in *Rusciano* did not show "habit" under Rule 406, as a matter of law, then here, where appellant produced only one instance of prior conduct, the trial court's decision not to admit that one example was not an abuse of discretion.

**892**

## IV.

*Ambiguity in Insurance Contract*

■ Appellant lastly contends the trial court erred by submitting the issue of ambiguity of certain policy language to the jury. Specifically, appellant contends it was error for the jury to consider whether the application questions 5(g) and 5(h) were ambiguous. The construction of terms in an insurance policy is a question of law, and whether those terms are ambiguous is also a question of law. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 34 (Minn.1979).

■ The general rule is that a new trial may be granted on a basis of errors of law only where those alleged errors were objected to at the time of trial. Minn.R.Civ.P. 59.01(f). In the present case, appellant failed to object to the error. Thus, while we do not rule on this last issue of appellant's, we note ambiguity is not a question for the trier of fact, and should be decided by the court should the issue of contract ambiguity arise upon remand.

## DECISION

The physician-patient waiver executed by decedent was sufficient to waive the statutory privilege of his heirs since he died within two years of signing the authorizations.

The trial court erred by excluding Dr. Thomasson's testimony and decedent's medical records relative to a physical examination and the question of decedent's smoking history. Other evidentiary rulings, although not necessarily reversible error by themselves, are analyzed in the event those rulings surface on retrial.

Reversed and remanded for trial in accordance with these instructions.