Windwillow **PAPPAGEORGE**
and Alethia **Pappageorge,**
Plaintiffs–Appellants,

v.

**FEDERAL KEMPER LIFE
ASSURANCE COMPANY,**
Defendant–Appellee.

No. 92CA2001.

Colorado Court of Appeals,
Div. II.

Jan. 27, 1994.

Rehearing Denied March 3, 1994.

Certiorari Denied Aug. 15, 1994.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Hayes and Thynne, P.C., Michael I. Thynne, Blunk, Johnson & Johnson, James D. Johnson, Sheila E. Barthel, Denver, for plaintiffs-appellants.

Rothgerber, Appel, Powers & Johnson, Franklin D. O'Loughlin, David G. Ditto, Cindy C. Oliver, Denver, for defendant-appellee.

Opinion by Judge TURSI.

Plaintiffs, Windwillow and Alethia Pappageorge, appeal the summary judgment of dismissal entered in favor of defendant, Federal Kemper Life Assurance Company. We affirm.

Plaintiffs were the named beneficiaries in a life insurance policy purchased from Federal Kemper by their father, Terry Pappageorge. After Pappageorge's death, Federal Kemper refused plaintiffs' claim for benefits and refunded the premiums paid. Plaintiffs commenced this action seeking recovery of the life insurance proceeds. The pertinent facts are not in dispute.

Pappageorge submitted an application for life insurance along with the first year's premium to Federal Kemper on October 4, 1988. The application contained the following agreement:

I [we] have read all the questions and answers in this application, including all required parts. All responses are true and complete to the best of my [our] knowledge and belief ...

I [we] agree:

1. this application, including all its parts, will be the basis for and form part of the Policy;

2. an Agent has no authority to alter the Company's rules or requirements, this Agreement, the Receipt, or the Policy;

3. the first premium will not be deemed paid unless any check, draft, or other instrument of payment [given as premium] is paid in accordance with its terms; and

4. *[except as provided in the Receipt, if given]* the insurance applied for never takes effect unless, during the lifetime of the Proposed Insured:

a. the Policy has been issued, delivered to, and accepted by me [us];

b. the required first premium has been paid;

c. any amendments issued with the Policy have been completed and signed; all while the health and habits of Proposed Insured remain as stated in this application. (emphasis supplied).

At that same time, Pappageorge was given a conditional receipt which provided temporary coverage pursuant to the following terms and restrictions:

In exchange for the payment of the first required premium with the application the Company will provide insurance prior to policy delivery, under the following terms. NO INSURANCE WILL BE PROVIDED UNDER THIS RECEIPT UNLESS ALL REQUIREMENTS ARE FIRST FULFILLED EXACTLY DURING THE LIFETIME OF THE PROPOSED INSURED IF ALL REQUIREMENTS ARE NOT SO MET, OR THE PROPOSED INSURED DIES BY SUICIDE, THE LIABILITY OF THE COMPANY SHALL BE LIMITED TO A REFUND TO THE APPLICANT OF THE PAYMENT MADE FOR THIS RECEIPT MEDICAL REQUIREMENTS ARE DEFINED BY THE COMPANY'S CURRENT RULES AND PRACTICES AND INCLUDE HOSPITAL AND PHYSICIAN REPORTS, AND MEDICAL EXAMINATIONS AND TESTS NO AGENT MAY ALTER OR WAIVE ANY PART OF THIS RECEIPT THIS RECEIPT PROVIDES NO INSURANCE FOR RIDERS OR ADDITIONAL BENEFITS.

**Requirements**—The following must first be fulfilled for insurance to arise:

a. All medical requirements are completed and received by the Company within 60 days from the date of the application.

b. The first premium has been paid in full.

c. All questions in the application have been answered.

d. All answers given in the application are true and complete, and

e. The Proposed Insured is acceptable to the Company under its rules and practices, for the plan and amount applied for, without amendment, at the rate class applied for or a lesser premium, as of the date all the Company's medical requirements are received by it.

**Start of Insurance**—If the above requirements are first met, this Receipt will provide insurance beginning the latest of: (1) the date of the application; or (2) the date of receipt of all medical requirements by the Company.

**End of Insurance**—*Once begun, any insurance this Receipt may provide ends at the earliest of: (1) 60 days after the date of the application; (2) when the Company sends a refund of the premium received in exchange for this Receipt; or, (3) the date any policy issued goes into effect. . . .* (emphasis supplied).

Federal Kemper issued the formal policy on November 4, 1988. The incontestability provision contained in the policy stated:

We will not contest the validity of this policy with respect to the Initial Specified Amount after this policy has been in force, during the insured's life, for 2 years from the Date of Issue. . . .

According to the definitional provisions set forth in the policy, the "date of issue" corresponded to the November 4, 1988 date.

On November 15, 1988, Pappageorge executed an amendment to the policy acknowledging his status as a smoker. Pursuant to language in the application and the amendment both documents were incorporated into and became part of the formal policy.

Pappageorge died on October 12, 1990. Federal Kemper thereafter discovered that, contrary to his representations in the application, Pappageorge had an extensive history of drug use. Based on those misrepresentations, Federal Kemper contested the validity of the policy. Plaintiffs raise no issue with respect to Pappageorge's drug history or the fact that he denied any drug use in his application. However, they maintain that he died after the incontestability provision took effect thereby precluding Federal Kemper's attempt to rescind the policy.

I.

The sole issue presented for our review, therefore, concerns the date from which the policy's two-year contestable period began to run. Plaintiffs argue that the period began to run either on the date the conditional receipt was issued or a week later when Federal Kemper deposited the check Pappageorge submitted as payment. Federal Kemper contends, and the trial court ruled, that the contestable period began to run on the policy's "date of issue." We agree and further reject plaintiffs' assertion that reli-

ance on the "date of issue" in the instant case conflicts with the requirements of Colorado law.

### A.

Inclusion of incontestability provisions in life insurance policies is mandated by § 10–7–102, C.R.S. (1987 Repl.Vol. 4A), which provides in pertinent part:

> (1) It is unlawful for any ... life insurance company to issue or deliver in this state any life insurance policy unless the same contains the following provisions:
>
> . . . .
>
> (b) A provision that the policy shall constitute the entire contract between the parties and *shall be incontestable after it has been in force during the lifetime of the insured for two years from its date....* (emphasis supplied).

■ Inasmuch as this statutory provision represents a limitation on the general right of contract, it is to be strictly construed. *Mutual Life Insurance Co. v. Daniels*, 125 Colo. 451, 244 P.2d 1064 (1952). Nevertheless, an insurance company cannot place a more onerous incontestability clause in the policy than the one prescribed by statute. *Parchman v. United Liberty Life Insurance Co.*, 640 S.W.2d 694 (Tex.Ct.App. 1982); *see also Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984) (Clauses in a contract of insurance which attempt to dilute, condition, or limit statutorily mandated coverage are invalid or void).

■ Incontestability clauses set forth in life insurance policies are subject to the ordinary rules of contract interpretation, and accordingly, any doubt or ambiguity created by the clause is to be resolved against the insurer and in favor of the insured or beneficiary. 1A J. Appleman, *Insurance Law & Practice* § 311 (1981). *See also American Family Mutual Insurance Co. v. Johnson*, 816 P.2d 952 (Colo.1991) (applying general rule of construction where conditional receipt found ambiguous.)

■ The contestable periods provided for in these clauses are generally viewed as beginning to run from the date the policy takes effect. However, when a binding receipt has been issued which relates coverage back to the date of the examination or application, the contestable period begins from the earlier date provided there is no specific provision to the contrary. Comment, *Operation of Binding Receipts in Life Insurance*, 44 Yale L.J. 1223 (1935); *Nationwide Life Insurance Co. v. Ojha*, 72 N.C.App. 355, 324 S.E.2d 292 (1985). *See also* 1A J. Appleman, *Insurance Law & Practice* § 312 (1981); G. Couch, *Cyclopedia of Insurance Law* § 72:33 (2d ed. 1983).

### B.

■ Plaintiffs argue that § 10–7–102(1)(b), C.R.S. (1987 Repl.Vol. 4A) unambiguously requires that the contestable period run from the inception of the insurance coverage and that the "date of issue" language in the formal policy subverts that directive. While we agree with plaintiffs that the statutory language in § 10–7–102(1)(b) is unambiguous, we are not persuaded that the words "its date" necessarily refer and apply to the conditional receipt.

As the trial court pointed out in its order, the terms "in force" and "its date" both modify and refer back to "the policy." Consequently, the words "its date" would be applicable to the conditional receipt only if it is considered a part of the policy. This reading of the statutory language is consistent with the narrow construction to be accorded § 10–7–102(1)(b), and it leads to the conclusion that the incontestability clause set forth in Federal Kemper's policy does not, on its face, violate the requirement of that provision. *See Parkerson v. Federal Home Life Insurance Co.*, 797 F.Supp. 1308 (E.D.Va. 1992) (incontestability clause identical to the one at issue here in compliance with that state's parallel statute).

### C.

Thus, in determining whether the contingent receipt provides an earlier effective date for coverage under the policy which would also apply to the commencement of the con-

testable period, we must ascertain if it is a part of the policy or if it otherwise creates an ambiguity that must be construed to the insured's benefit.

The cases relied upon by plaintiffs to support their position almost universally conclude that the contingent receipt or temporary binder activates the coverage applied for and merges with the policy. *See American National Insurance Co. v. Motta,* 404 F.2d 167 (5th Cir.1968) (dealing with a two-year incontestability clause and a two-year suicide exclusion clause); *Midland National Life Insurance Co. v. Citizens & Southern National Bank,* 641 F.Supp. 516 (M.D.Ga. 1986); *Turkett v. Gulf Life Insurance Co.,* 279 S.C. 309, 306 S.E.2d 602 (1983); *Holtze v. Equitable Life Assurance Society,* 276 Md. 681, 351 A.2d 139 (1976).

■ However, the extent of the temporary insurance effected by such receipts or binders is dependent primarily on the particular wording of the receipt in question. *Farmers New World Life Insurance Co. v. Crites,* 29 Colo.App. 394, 487 P.2d 608 (1971) (holding that conditional receipt issued to deceased provided temporary coverage from date of completion of the application to the date of death which occurred prior to the company's acceptance of application).

■ Unlike the binders issued in the foregoing cases, a plain reading of the language comprising the receipt here satisfies us that the trial court correctly determined that the receipt constituted a separate agreement between the parties which provided temporary contingent coverage for the protection of the applicant pending the processing of the policy. The temporary coverage ceased under the terms of the conditional receipt upon the issuance of the policy.

In its analysis, the trial court relied upon *Hammer v. Investors Life Insurance Co.,* 473 N.W.2d 884 (Minn.Ct.App.1991), which addressed a very similar fact situation to that presented here. Like the temporary binder involved in *Hammer,* which that court determined was a separate contract, the coverage provided Pappageorge under the conditional receipt expired under all circumstances after 60 days. Consequently, and as noted in

*Hammer,* it would have been superfluous to imply the statutory two-year incontestability language into the receipt.

More persuasively, however, here the conditional receipt made no reference to the terms of the policy and it set forth its own requirements for coverage including a condition, obviously not met by Pappageorge, that all answers in the application be true and complete. *Cf. American National Insurance Co. v. Motta, supra.* Misstatement, therefore, was expressly available as an affirmative defense to coverage under both the conditional receipt and policy until such time as either the temporary coverage ceased or the two-year contestable period under the statute had run.

Comparing the policy here to that issued in *Hammer,* the trial court also concluded that it was unambiguous. Both policies not only explicitly provided that their effective date would be the "date of issue," but they also specified that date as the one marking all of the important events connected with the coverage such as policy anniversaries. Thus, once issued, the policy defined its "date" for purposes of § 10–7–102(1)(b).

An additional fact, not discussed in *Hammer,* is that the policy here did not include the conditional receipt in its definition stating which documents comprised the entire contract of insurance between the company and the insured.

Thus, not only do we agree that two separate contracts were created, we also agree with the trial court's assessment that neither document was ambiguous.

The judgment is affirmed.

NEY and TAUBMAN, JJ., concur.