**In re PHILIP SERVICES (DELAWARE), INC., et al., Reorganized Debtors.**

**Philip Services Corporation and Luntz Corporation, Plaintiffs,**

**v.**

**Andrew Luntz, Gregory Luntz, Individually and in his capacity as Representative of Certain Shareholders of Pre–Merger Luntz Corporation, John Luntz and McDonald & Company Securities, Inc., Defendants.**

**Bankruptcy Nos. 99–2170 (MFW), 99–2385(MFW) to 99–2518(MFW). Adversary No. 99–346(MFW).**

United States Bankruptcy Court, D. Delaware.

Oct. 18, 2002.

Gregg M. Galardi, Gary A. Rubin, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, DE, Edward J. Mehan, David E. Carney, Skadden, Arps, Slate, Meagher & Flom, LLP, Washington, DC, for plaintiffs.

J.R. Julian, J.R. Julian, P.A., Wilmington, DE, Nathaniel Metz, Craig R. Trachtenberg, Stuart M. Brown, Buchanan Ingersoll, P.C., Philadelphia, PA, for Luntz defendants.

Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, for McDonald & Company Securities, Inc.

Robert Brady, Joseph A. Malfitano, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, Howard S. Beltzer, Evan C. Hollander, Daniel P. Ginsberg, White & Case LLP, New York City, for The Bank Group.

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Defendants' Motion for Summary Judgment and the Plaintiffs' Response thereto. For the reasons set forth below, we grant the Defendants' Motion.

## I. FACTUAL BACKGROUND

Philip Environmental Inc. Delaware Acquisition Corporation ("PEDAC") was a Delaware corporation. Pursuant to a merger agreement dated December 30, 1996 ("the Merger Agreement"), PEDAC merged with Luntz Corporation. The Merger Agreement included four parties: PEDAC, its parent [2] Philip Services Corporation ("PSC"), Luntz Corporation ("Old

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. At the time of the Merger Agreement, the parent of PEDAC was Philip Environmental, Inc. ("PEN"), a Canadian Corporation, which subsequently changed its name to Philip Services Corporation ("PSC"), a Canadian Corporation, on May 22, 1997. PEN was the named party to the Merger Agreement, but for simplicity we will refer to PEN and Philip Services as "PSC".

Luntz"), and Luntz Services Corporation ("LSC"). As a result of the Merger Agreement, on January 7, 1997, Old Luntz was merged into PEDAC and the surviving entity was renamed the Luntz Corporation ("New Luntz").

As part of the consideration under the Merger Agreement, New Luntz[3] issued a promissory note due on January 7, 1999, in the amount of $5,000,000 ("the Promissory Note"). PSC was guarantor on the Promissory Note. John Luntz, Andrew Luntz and Gregory Luntz (collectively "the Luntz Defendants") were shareholders of the pre-merger Luntz Corporation and beneficiaries of the Promissory Note.[4] The Luntz Defendants continued as officers and/or directors of the Luntz Corporation after the merger.[5]

After the merger, on or about August 11, 1997, PSC entered into a credit agreement with certain lenders ("the Pre–Petition Secured Lenders") by which it borrowed $1.5 billion. The obligation of PSC was guaranteed, *inter alia*, by New Luntz.

In 1998, the financial condition of PSC and its affiliates deteriorated. On November 13, 1998, PSC announced that it was suspending the payment of interest on the secured debt. That same day, certain creditors of PSC and its affiliates announced they would file an involuntary petition in bankruptcy against PSC and its affiliates if they did not negotiate a pre-packaged plan of reorganization.

On November 16, 1998, the Luntz Defendants caused New Luntz to pre-pay the Promissory Note in the amount of $5,000,000 to an account at McDonald & Company Securities, Inc. ("McDonald"), in the name of Gregory Luntz as representative of the former Luntz shareholders.

On June 25, 1999, New Luntz and several of its affiliates ("the Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The Canadian corporation, PSC, was not one of the Debtors. On November 30, 1999, the Debtors confirmed a Plan of Reorganization.

On September 24, 1999, PSC and New Luntz (collectively "the Plaintiffs") commenced this adversary proceeding against the Luntz Defendants and McDonald (collectively "the Defendants") seeking avoidance of the November 16, 1998, payment of the Promissory Note. The Plaintiffs assert that the $5,000,000 payment is avoidable as a preference. The Defendants filed answers asserting, *inter alia*, that New Luntz was not insolvent at the time of the transfer, because the guarantee of the debt to the Pre–Petition Secured Lenders was itself avoidable as a fraudulent conveyance.[6]

---

3. PEDAC was named obligor on the Promissory Note; however, as a result of the merger, it became New Luntz.

4. The Complaint alleges there were other shareholders of the Luntz Corporation who were also beneficiaries of the Promissory Note, namely family members of the Luntz Defendants. It is unclear whether anyone else was a shareholder and what percentage interest the Luntz Defendants had in the Promissory Note.

5. At all relevant times after the merger, John Luntz was a director, Gregory Luntz was an officer, and Andrew Luntz was an officer and a director.

6. On November 9, 2000, the Plaintiffs filed a Motion for Judgment on the Pleadings, asserting that the doctrine of law of the case required a finding that New Luntz's guarantee of the debt owed to the Pre–Petition Secured Lenders is not avoidable since the validity of their claims had been upheld as part of the DIP financing order. We denied the motion for judgment on the pleadings, however, ruling that the issue of the avoidability of the guarantee was never litigated and, therefore, the law of the case doctrine did not apply.

On January 8, 2002, the Defendants filed a Motion for Summary Judgment. On January 28, 2002, the Plaintiffs filed a Brief in Opposition to the Defendants' Motion for Summary Judgment. On March 1, 2002, the Defendants filed a Reply Brief in Support of their Motion for Summary Judgment. By telephone conference we asked for clarification of the facts surrounding the merger and corporate identities of the Plaintiffs. Affidavits clarifying these facts were filed on August 29, 2002.

## II. *JURISDICTION*

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), (b)(2)(A), (F), and (O).

## III. *DISCUSSION*

To grant a motion for summary judgment, the court must determine if the moving party has established that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must assume that undisputed facts set forth in the record are true. *In re Trans World Airlines, Inc.*, 180 B.R. 386, 387 (Bankr.D.Del. 1994); *Tanzer v. International General Industries, Inc.*, 402 A.2d 382, 386 (Del.Ch. 1979).

The Defendants' Motion for Summary Judgment asserts that the Merger Agreement, including the $5,000,000 Promissory Note, is an executory contract that was assumed by the Plaintiffs pursuant to section 365 of the Bankruptcy Code. The Defendants further assert that, by assuming the Merger Agreement as an executory contract, the Plaintiffs are obligated under section 365(b)(1) to cure any defaults on the contract. Therefore, they argue that, even if the $5,000,000 payment is avoided as a preference, the payment would have to be immediately returned to the Defendants as a cure payment pursuant to section 365(b)(1).

The Plaintiffs respond that the Promissory Note was an independent instrument, separate from the Merger Agreement. The Plaintiffs further assert that neither the Promissory Note nor the Merger Agreement are executory contracts. Therefore, the Plaintiffs argue that the $5,000,000 payment can be avoided and they will not be obligated to cure any defaults pursuant to section 365(b)(1). Alternatively, the Plaintiffs assert that there are material issues of fact in dispute including the Defendants' assertion that the Defendants have non-monetary obligations still due under the Merger Agreement. Therefore, the Plaintiffs assert that summary judgment is not appropriate.

A. *The Merger Agreement and Promissory Note Are an Executory Contract*

■ The traditional test for determining if an agreement is an executory contract pursuant to section 365 is the "Countryman" definition. The Countryman definition states that a contract is executory only where the obligations "of *both* the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, Executory Contracts in Bankruptcy; Part I, 57 *Minn. L.Rev.* 439, 460 (1973) (emphasis added).

■ The Third Circuit has adopted the Countryman definition. *See, e.g., Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir.1989). The Third Circuit has emphasized that the Countryman test requires a court to deter-

mine whether the failure to perform an obligation under the contract would constitute a material breach. *See, e.g., In re Columbia Gas System, Inc.,* 50 F.3d 233, 244 n. 20 (3d Cir.1995); *In re Access Beyond Techs., Inc.,* 237 B.R. 32, 43 (Bankr. D.Del.1999). The time for testing whether there are material unperformed obligations on both sides is the date the bankruptcy petition is filed. *See, e.g., Columbia Gas,* 50 F.3d at 240.

### 1. The Promissory Note and the Merger Agreement Are Fully Integrated

The Plaintiffs assert that the $5,000,000 Promissory Note is independent of the Merger Agreement. However, the Defendants assert that the Promissory Note and the Merger Agreement are fully integrated, constituting one agreement.

■ Under general contract law, the parties' intentions determine whether two separately executed documents are in reality one agreement. *See, e.g., In re Teligent, Inc.,* 268 B.R. 723, 728 (Bankr. S.D.N.Y.2001) *citing Huyler's v. Ritz–Carlton Restaurant & Hotel Co.,* 1 F.2d 491, 493 (D.Del.1924).

### a. The Merger Agreement Designates the Promissory Note as Part of the Merger Agreement

■ The Defendants assert that the plain language of the Merger Agreement establishes that the Promissory Note was intended to be a part of the Merger Agreement. The Plaintiffs disagree.

The Merger Agreement states: *"All of the schedules, attached hereto are hereby incorporated in and shall be deemed a part of this Agreement."* (Merger Agreement at § 1.11) (emphasis added). Schedule 3.1(d)(iii) of the Merger Agreement is the $5,000,000 Promissory Note.

The Merger Agreement further defines "Entire Agreement" as "this Agreement together with the Ancillary Agreements *constitute the entire agreement* among the Parties." (*Id.* at § 1.6) (emphasis added). The Merger Agreement defines "Agreement" as "this agreement and plan of merger and *all schedules and instruments* in amendment or confirmation of it." (*Id.* at § 1.1(c)) (emphasis added). The Merger Agreement defines "Ancillary Agreements" as *"all agreements, certificates and other instruments* delivered or given pursuant to this agreement; and 'Ancillary Agreement' means any one of such agreements, certificates or other instruments." (*Id.* at § 1.1(d)) (emphasis added). The definitions of "Entire Agreement," "Agreement," and "Ancillary Agreement," evidence the parties' intention to include all covenants, contracts, and promises as inseparable parts of the Merger Agreement. We conclude that the Promissory Note was intended to be an inseparable part of the Agreement because it is an instrument attached to and delivered in connection with the Merger Agreement.

### b. The Interrelatedness of the Merger Agreement and the Promissory Note Make Them Inseparable

The Plaintiffs assert that the nature of the Promissory Note makes the Note separate from the Merger Agreement. The Plaintiffs argue that because the Promissory Note is a negotiable instrument, which is enforceable on its face independent of the Merger Agreement, it cannot be considered to be part of that Agreement.

The Defendants dispute this characterization, however, noting in particular that the Promissory Note is non-assignable. The Defendants assert further that under the Merger Agreement the Plaintiffs are entitled to offset obligations due them against the Note, thus demonstrating the inter-dependence of the documents.

In addition, the Defendants argue that the structure of the consideration given under the Merger Agreement shows the integration of the Note in that Agreement. The consideration due to the Defendants under the Merger Agreement totaled $39,818,215 and was to be paid in several forms: (i) $1,818,215 in immediately available funds; (ii) a $12,000,000 negotiable promissory note; (iii) the $5,000,000 non-assignable Promissory Note; (iv) $20,000,000 in the form of 2,222,222 unregistered common shares of PSC; and (v) $1,000,000 in immediately available funds due on February 15, 1997. (*Id.* at § 3.1(d).)

There is no indication in the Merger Agreement that the delineated consideration is separable from the Merger Agreement or even corresponds to reciprocal obligations to be performed by the other party. For example, there is no indication that the Plaintiff's promise to pay $1,818,215 at closing is in consideration exclusively for the promise of LSC, an affiliate of the Luntz Defendants, to maintain $3,000,000 in tangible net worth. (*Id.* at §§ 3.1(d), 6.13.) Rather, each form of consideration paid by any party was merely one inseparable part of the overall exchange. Consequently, we conclude that the $5,000,000 Promissory Note cannot be separated from the Merger Agreement.

### 2. *Material Obligations Remain Unperformed by Both Parties*

■ The Defendants assert that additional material obligations remain due from both parties under the Merger Agreement, thus rendering the Merger Agreement an executory contract. The Plaintiffs contend, however, that the remaining obligations are not material.

■ Terms of a contract are material if those terms go to the essence of the contract. *See, e.g., Teligent,* 268 B.R. at 730–

31 (performance was material because "each performance *goes to the essence* of what the other party sought and expected when he entered into the Merger Agreement, and without it, the party will lose the benefit of the bargain that he thought he struck") (emphasis added); *Dickinson Med. Group,* 1989 WL 40965, *8 (Del.Super.Ct.1989) (breach was material because the terms breached were not *de minimus* and *went to the essence* of the agreement).

The Defendants assert that PSC, New Luntz's parent, remains obligated to perform environmental remediation duties pursuant to section 6.9 of the Merger Agreement. Section 6.9 of the Merger Agreement provides:

> [PSC] covenants and agrees with [Old] Luntz that [PSC] shall undertake and be responsible for the remediation of the conditions of environmental impairment associated with the Owned Real Properties and the Leased Real Properties.

(Merger Agreement at § 6.9.) According to the Defendants, the responsibility for the environmental remediation was one of the "most important issues" that had to be resolved before the merger could be completed. (Affidavit of Gregory W. Luntz in Support of Motion for Summary Judgment at p. 3.) They argue that the environmental obligations place a substantial burden on PSC and provide a substantial benefit to the Defendants and the Luntz Corporation.

In addition, the Merger Agreement incorporated the Employment Agreements and Non–Competition Agreements executed by the parties. Section 7.1 of the Merger Agreement required that:

> [Old] Luntz *shall have delivered or caused to be delivered* to [PSC] the following in form and substance reasonably satisfactory to [PSC]: . . . (iii) the Employment Agreement duly executed by

each of the Shareholders of Luntz listed ... (iv) the Non–Competition Agreement duly executed by each of Bill Luntz, Bob Luntz and Ted Luntz.

(Merger Agreement at § 7.1.) As with the Promissory Note, these agreements are incorporated into the Merger Agreement by the definitions of "Entire Agreement," "Agreement," and "Ancillary Agreement." The Employment and Non–Competition Agreement extended for five years (or until 2003) and contained ongoing obligations from both sides.

Among the remaining obligations under the Merger Agreement are the responsibility of the Defendants and LSC for environmental compliance at certain contaminated sites. Section 4.13(b) of the Merger Agreement provides:

> Except as disclosed ... [Old] Luntz ... have been in compliance with all Environmental Laws. Further, except as disclosed ... within the last five (5) years [Old] Luntz has never received any summons, citation, direct notice, directive, letter or other communications, written or oral, concerning any alleged violations ... of any Environmental Law, or any other federal, state or local laws, ordinances, rules ....

(*Id.* at § 4.13(b).)

Further, section 6.13 of the Merger Agreement requires LSC to maintain $3,000,000 in tangible net worth for a period of ten years from the closing, or until 2007. (*Id.* at § 6.13.) These covenants are enforceable under the indemnification provisions of the Merger Agreement (*Id.* at § 10.2(a).)

Section 10.2 of the Merger Agreement provides that:

> Each of [Old] Luntz and LSC covenants and agrees to indemnify and save [PSC] harmless of and from any Claim or Loss, suffered by, imposed upon or asserted

against [PSC] ... as a result of, in respect of or arising out of:

> (a) Any failure of LSC or [Old] Luntz to perform or fulfill any covenant or agreement under this [Merger Agreement];
>
> (b) Any breach or inaccuracy of any representation or warranty of [Old] Luntz or LSC contained in this [Merger Agreement] or in any certificate or document furnished by [Old] Luntz or LSC with respect to this [Merger Agreement];
>
> (c) Any tax liability associated with the transfer of the Excluded Assets or Excluded Liabilities ... ; or
>
> (d) All claims, demands, suits, causes of action, proceedings, judgments, costs and expenses or other liabilities of any kind whatsoever in respect of the foregoing, including reasonable legal fees and disbursements in connection with the foregoing.

(*Id.* at § 10.2.)

Section 10.3 of the Merger Agreement imposes similar indemnification obligations on the Plaintiffs:

> [PSC] hereby covenants and agrees to indemnify and save the Luntz Shareholders and LSC harmless of and from any Claim or Loss, suffered by, imposed upon or asserted against [PSC] ... as a result of, in respect of or arising out of:
>
> (a) Any failure by [PSC] to perform or fulfill any covenant or agreement of [PSC] under this [Merger Agreement];
>
> (b) Any breach or inaccuracy of any representation or warranty of [PSC] contained in this [Merger Agreement] or in any certificate or document furnished by [PSC] with respect to this [Merger Agreement]; or
>
> (c) All claims, demands, suits, causes of action, proceedings, judgments, costs and expenses or other liabilities of any

kind whatsoever in respect of the foregoing, including reasonable legal fees and disbursements in connection with the foregoing.

(*Id.* at § 10.3.)

The indemnification obligations were still largely unperformed as of the date of the Petition since they were to last from three to twelve years after Closing.[7]

Section 10.7 of the Merger Agreement enumerates very specific procedures to be followed in the event a party seeks indemnification. (*Id.* at § 10.7.) Section 10.7(a) requires that the party seeking indemnification notify the party against whom indemnification is sought of any claims that have been brought. (*Id.*) This section also authorizes the indemnifying party to conduct and control the settlement or defense of any claim brought by a third party. (*Id.*) The indemnified party must cooperate and make available to the indemnifying party any information, documents, records, or employees that may assist the indemnifying party in defending or settling the suit. (*Id.*)

The obligations imposed under section 10.7, while non-monetary, carry significant burdens and create considerable benefits. If the Luntz Defendants breached their indemnity agreement, the Plaintiffs would be able to setoff payment of the $5,000,000 Promissory Note. (*Id.* at § 10.5.) Further, failure to pay the Promissory Note is a material breach of the Merger Agreement excusing Defendants from performing their environmental indemnity obligations under Article 10 and from maintaining the tangible net worth obligation of LSC under section 6.13.

The Plaintiffs assert that the Merger Agreement is not an executory contract because the unperformed indemnification obligations are not material. In support of their position, Plaintiffs cite *In re THC Financial Corp.*, 686 F.2d 799, 804 (9th Cir.1982); *In re Grayson–Robinson Stores, Inc.*, 321 F.2d 500, 501 (2d Cir. 1963); and *In re Chateaugay Corp.*, 102 B.R. 335, 348 (Bankr.S.D.N.Y.1989).

We conclude, however, that these cases are distinguishable from the case at hand. The court in *THC* held that the indemnification obligations were not executory because one side had completed performance and all that remained for the other side was the obligation to indemnify. Similarly in *Grayson–Robinson*, the Court concluded that the contracts were not executory because the only obligation that remained unperformed was the payment of money. *Chateaugay Corp.* summarizes the holdings in *THC* and *Grayson–Robinson* as follows: "the Countryman definition of executory contracts excludes from the purview of § 365 of the Code those contracts where *one party has completed performance,* ... or where the *only performance that remains is the payment of money.*" 102 B.R. at 345 (citations omitted).

In contrast, in the instant case, neither side has completed performance and both sides have monetary and non-monetary obligations remaining. Therefore, the cases cited by the Plaintiffs are not applicable.

---

**7.** Section 10.1 of the Merger Agreement provides that:

> All representations and warranties of the Parties contained in or provided for by this Agreement or in any Ancillary Agreement ... *shall survive ... and remain in full force and effect ... for a period of three (3) years* except: ... (b) the representation made in Section 4.13, Environmental Matters shall survive the Closing for ten (10) years; .... The covenants of the parties set forth in this Agreement shall survive the Closing for twelve (12) years.

(*Merger Agreement* at § 10.1) (emphasis added).

The Defendants rely on *In re Preston*, 53 B.R. 589 (Bankr.M.D.Tenn.1985) to support their assertion that indemnification provisions accompanied by other future obligations render a contract executory. In *Preston*, the agreement for the sale of a car dealership provided that the seller/debtor agreed to indemnify and hold harmless the buyer and the buyer agreed to provide the debtor with two automobiles per year. Although the sale of the automobile dealership assets was the principle purpose of the Agreement, the *Preston* Court concluded that the promise to indemnify was a substantial element of the overall transaction. *Id.* at 591. The same conclusion can be drawn in this case: while the sale of Old Luntz and its assets was the principle purpose of the Merger Agreement, the future obligations were also substantial elements of the overall transaction. In fact, the future obligations of the parties remaining due in this case are far more substantial than those remaining due in *Preston*.

◼ The Plaintiffs also argue that the indemnification obligations imposed on the parties cannot be considered material because they are contingent and may never materialize. We reject this argument. While the indemnification obligations in this case are contingent upon a future occurrence, contingency of an obligation does not mean it is not executory under section 365 of the Bankruptcy Code. *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir.1985) (contingent duties of defending infringement suits and indemnification are executory and material); *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104, 117 (Bankr.S.D.N.Y.1982) (obligation to defend infringement suits makes contract executory as to promisor).

Therefore, we find that the Merger Agreement imposes material obligations that remain unperformed, Failure of either party to complete performance would be a material breach excusing the performance of the non-breaching party. Consequently, we conclude that the Merger Agreement is an executory contract under section 365.

In addition, if the pre-payment of the $5,000,000 Promissory Note is avoided, there would remain under the Merger Agreement the obligation to pay that amount. That Note represented approximately 12.5% of the total monetary consideration due under the Merger Agreement. Thus, it is clearly material. This obligation, together with the other material unperformed obligations, render the Merger Agreement executory as of the petition date.

B. *The Merger Agreement Was Assumed*

The Defendants assert that the Plaintiffs are estopped [8] from denying that the Plaintiffs have assumed the Merger Agreement. However, the Plaintiffs argue that no estoppel doctrine applies here.

◼ The elements of judicial estoppel are:

(1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than law or legal theory; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be es-

---

**8.** Defendants assert equitable estoppel, judicial estoppel, claim preclusion, and issue preclusion.

topped must have acted intentionally, not inadvertently.

*Devan v. CIT Group/Commer. Servs., Inc. (In re Merry–Go–Round Enters.)*, 229 B.R. 337, 345 (Bankr.D.Md.1999), *citing Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 292 (4th Cir.1998). *See also In re Home Health Corporation of America, Inc.*, 268 B.R. 74, 78 (Bankr.D.Del.2001).

■ The Defendants assert that the Merger Agreement was assumed pursuant to the Plaintiffs' Plan of Reorganization, which provides that the Debtors are "deemed to have assumed each executory contract" unless it was previously assumed or rejected. (Plan of Reorganization, Art. VIII, ¶ A.) Consistent with the Plan, the Confirmation Order provides that "except as otherwise provided . . . all of the executory contracts and unexpired leases of each Debtor shall be deemed to have been assumed." (Confirmation Order, ¶ 12.) The Confirmation Order binds the Plaintiffs to all determinations in the Order and provisions in the Plan of Reorganization.[9] The Plan did not list the Merger Agreement as an executory contract that would not be assumed, and the Merger Agreement was not previously rejected. Thus, we must conclude that the Merger Agreement was assumed pursuant to the Confirmation Order. As such, the Plaintiffs are estopped from asserting that they did not assume the Merger Agreement.

### C. *The Plaintiffs Cannot Maintain Their Preference Action*

■ The Defendants assert that avoiding the pre-payment of the Promissory Note as a preference would be futile since it would result in a default under an as-

sumed contract that must be promptly cured according to section 365(b).

In analyzing a preference, we begin with section 547. Of relevance here, is subsection 547(b)(5) which allows the avoidance of a transfer:

> that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(5).

For purposes of subsection 547(b)(5), some Courts conclude that the analysis must consider the estate as of the petition date, without regard to later events. *See, e.g., Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458 (6th Cir.1991); *Neuger v. United States (In re Tenna Corp.)*, 801 F.2d 819 (6th Cir.1986) (*citing Palmer Clay Prods. Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936)).

The *Tenna* Court based its decision on the Supreme Court holding in *Palmer Clay* that the petition date (rather than the date the preference is commenced) is the relevant date for the subsection 547(b)(5) analysis. However, the *Palmer Clay* Court itself seemed to acknowledge that the analysis cannot ignore actual events that occur post-petition.

> We may not assume that Congress intended to disregard the actual result, and to introduce the impractical rule of requiring the determination, as of the

---

9. The Confirmation Order provides that "the provisions of the Plan and the Confirmation Order shall be binding upon . . . the Debtors." (Confirmation Order ¶ 5.) Section 1141(a) of the Bankruptcy Code also provides that "the provisions of a confirmed plan bind the debtor."

date of each payment, of the hypothetical question: What would have been the financial result if the assets had then been liquidated and the proceeds distributed among the then creditors.

*Palmer Clay Prods. Co. v. Brown,* 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936).

The *Tenna* Court interpreted this language very narrowly. In *Tenna,* there were post-petition superpriority liens on the estate's assets arising from a post-petition financing arrangement at the time the preference action was filed. The *Tenna* Court found that the petition date, rather than the filing date of the adversary proceeding, was the proper reference point for the preference analysis. As a result, the *Tenna* Court declined to include the post-petition debt and the superpriority liens in the distribution analysis. Nonetheless, it undermined its "narrow" reading of *Palmer Clay* by including the chapter 11 post-petition administrative expenses as the estimated chapter 7 expenses. *Id.* at 823.

The *Tenna* decision has been cited as a basis for refusing to incorporate "actual events" or "actual results" into the subsection 365(b)(5) analysis. *See e.g., Alvarado v. Walsh (In re LCO Enterprises ),* 12 F.3d 938, 940 (9th Cir.1993) (Trott, J., dissenting) (disagreeing with the majority and maintaining that the bankruptcy court must decide whether a hypothetical chapter 7 trustee would assume an executory contract regardless of whether the contract has actually been assumed); *Gosch v. Burns (In re Finn),* 86 B.R. 902 (Bankr. E.D.Mich.1988) (holding that payments under a reaffirmation agreement are not distributions pursuant to title 11 and therefore the reaffirmation should be ignored in the subsection 547(b)(5) analysis).

Other courts, however, do not read subsection 547(b)(5) as narrowly as the Sixth Circuit. Basing its decision on "congressional intent and common sense," the Eleventh Circuit concluded that a court must consider whether the underlying contract has been assumed in the bankruptcy case in its analysis. *Seidle v. GATX Leasing Corporation,* 778 F.2d 659, 660 (11th Cir. 1985). In *Seidle,* during the course of a chapter 11 reorganization, the debtors assumed the relevant contract[10] and were obligated to cure prior defaults under that contract. *Id.* at 661. Key to the *Seidle* Court's analysis was the conclusion that if the creditor had not received the cure payment during the preference period, it would have received that payment upon approval of the assumption stipulation without threat of a preference action. *Id.* at 665. Thus the *Seidle* Court refused to allow the trustee's attempt to thwart the stipulation by a subsequent preference action. *Id.*

Relying on the *Seidle* decision, the Ninth Circuit has held that under subsection 547(b)(5), a bankruptcy court is not required to "hypothesize whether a hypothetical chapter 7 trustee would assume a lease" but must "base its analysis on the fact that the lease was actually assumed in the chapter 11 proceedings." *LCO Enterprises,* 12 F.3d at 940. The *LCO* Court rejected the argument that a hypothetical chapter 7 trustee would probably not have assumed the lease (when the chapter 11 debtor had already assumed the contract) by highlighting the inequity of the trust-

---

**10.** The assumption was pursuant to section 1110. However, for purposes of the subsection 547(b)(5) analysis, sections 365 and 1110 work substantially the same. Section 1110 forces assumption or rejection of airline equipment contracts within sixty days of the petition where a typical executory contract may be assumed or rejected anytime prior to confirmation of a chapter 11 plan. *Compare* 11 U.S.C. § 365 *with* 11 U.S.C. § 1110.

ee's position: maintaining continued possession of the leased property post-petition while recovering the rent paid prepetition. *Id.* at 942–43. In dismissing the preference action, the *LCO* Court stated: "The trustee cannot use [section] 547(b) to circumvent the [cure] requirements of [section] 365(b)." *Id.* at 943.

The most recent decision is from the Seventh Circuit in *In re Superior Toy & Manufacturing Co.*, 78 F.3d 1169 (7th Cir. 1996). The *Superior Toy* Court held that "Section 547 and [section] 365 are mutually exclusive avenues for a trustee. A trustee may not prevail under both, [n]or may a subsequent trustee pursue one course, when her predecessor has pursued another." *Id.* at 1174. Central to the *Superior Toy* decision is the conviction that allowing a preference suit after assumption of a contract would undermine Congress' intent to insure that a contracting party is made whole before it is forced to continue performance to a debtor in bankruptcy. *Id.*

We agree with the reasoning of the courts in *Seidle*, *LCO*, and *Superior Toy* and reject the narrow test adopted by the Sixth Circuit in *Tenna*. Thus we conclude that once an executory contract is assumed, the trustee or debtor may not maintain a preference action to recover payments made prepetition pursuant to that contract. As a result, summary judgment in favor of the Defendants is warranted in this case.

 Even if we were to follow the Sixth Circuit's analysis and conclude that the payment at issue is a preference, the Defendants would still have the right (under section 365) to insist upon the repayment of the $5,000,000 as a cure, since the contract has been assumed. Thus, whether we consider the assumption of the executory contract as eliminating a necessary element of a preference or as a defense in the nature of a setoff or recoupment, we conclude that requiring the Defendants to repay the $5,000,000 would be a futile act. This is particularly so in this case where the time to pay the $5,000,000 under the Merger Agreement has already long passed.[11]

## IV. *CONCLUSION*

For the reasons set forth above, we grant the Defendants' Motion for Summary Judgment.

---

11. Although the Defendants (apparently in reaction to news reports of New Luntz's financial troubles) caused New Luntz to pre-pay the $5,000,000 on November 16, 1998, that payment was due under the contract on or before January 7, 1999, prior to the June 25, 1999, petition date. Thus, if the Note had not been prepaid, it would have had to be paid as part of the cure when the Merger Agreement was assumed at confirmation of the Debtors' Plan.