**In re CENTRIX FINANCIAL, LLC, et al., Debtors.**

**Jeffrey A. Weinman, as liquidating trustee of the Centrix Liquidating Trust, Plaintiff,**

**v.**

**Allison Payment Systems, LLC, Defendant.**

**Bankruptcy No. 06–16403 EEB.**
**Adversary No. 08–01576 EEB.**

United States Bankruptcy Court, D. Colorado.

June 15, 2010.

Harrie F. Lewis, John C. Smiley, Denver, CO, for Plaintiff.

Ben Caughey, Roberto Ramirez, Indianapolis, IN, Brent R. Cohen, Chad S. Caby, Denver, CO, for Defendant.

## ORDER

ELIZABETH E. BROWN, Bankruptcy Judge.

THIS MATTER has come before the Court on the Defendant's Motion for Summary Judgment. Plaintiff Jeffrey A. Weinman, the liquidating trustee of the Centrix Liquidating Trust (the "Trustee") set out four claims in his complaint alleging, under 11 U.S.C. §§ 547(b), 548(a)(1)(B), 548(a)(1)(A), and 549(a), alternative theories for the recovery of pre- and post-petition payments by the Debtor Centrix Financial, LLC. ("Debtor") to the Defendant.[1] In the present Motion, the Defendant has raised an affirmative defense that these payments cannot be recovered through avoidance powers because they were payments made on an executory contract that the Debtor later assumed and assigned (the "Contract Assumption Defense"). The Trustee opposes this Motion on three grounds. First, the Trustee argues there is a material ambiguity as to which of two contracts the Debtor assumed. Second, he urges the Court not to recognize the Contract Assumption Defense. Finally, he argues that, even if the Court was inclined to recognize this defense, it should not do so in this case because the Defendant waived this defense by failing to specifically plead it in its Answer.

## I. Background

Prior to the Debtor's bankruptcy, the Debtor and the Defendant had been parties to two contracts. One contract called for Defendant to provide postage metering and mailing services to the Debtor ("Postage Accounts Contract"). The second contract obligated the Defendant to provide other professional services, such as the generation of the Debtor's monthly statements ("Professional Services Contract"). The parties dispute whether these contracts became one integrated contract, or remained two distinct contracts. On February 6, 2007, this Court issued an order authorizing the sale of substantially all of the Debtors' assets. In connection with the sale, it also granted the Debtors' motion to assume and assign certain executory contracts, including the "contract for generation of monthly payment statements" between Debtor and Defendant.

In the Complaint, the Trustee seeks to avoid nine specifically identified transfers from Debtor to the Defendant, totaling $518,853.41. Neither the Defendant nor the Trustee, however, has matched these specific payments to either of the contracts. Only one payment, in the amount of $25,000, which cleared the bank on September 19, 2006, represents a post-petition transfer.

## II. Summary Judgment Standards

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that: "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056. In applying this standard, this Court ex-

---

1. All references to "Section" or "§ " shall refer to Title 11, United States Code, unless otherwise noted.

amines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Schwartz v. Bhd. of Maint. of Way Employees,* 264 F.3d 1181, 1183 (10th Cir.2001). "The moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment. . . ." *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). "When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Pelt v. Utah,* 539 F.3d 1271, 1280 (10th Cir.2008). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 979 (10th Cir.2002).

The analysis is slightly different with respect to a defendant's affirmative defenses. At trial, the Defendant would bear the burden of proof with regard to its Contract Assumption Defense. When a defendant moves for summary judgment on an affirmative defense, it must establish "beyond peradventure all of the essential elements of the . . . defense to warrant judgment in [its] favor." *Martin v. Alamo Comty. College Dist.,* 353 F.3d 409, 412 (5th Cir.2003) (quoting *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986)); *see also Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir.1997) (defendant moving for summary judgment on an affirmative defense "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the exis-

tence of a disputed material fact." *Hutchinson,* 105 F.3d at 564.

## III. Discussion

### A. Integration of Contracts

The Debtors' motion to assume and assign certain executory contracts included a request to assume the "contract for generation of monthly payment statements" between the Debtor and Defendant, but it did not identify either the Postage Accounts Contract or the Professional Services Contract by name or account number. The Defendant asserts that, while there were two *accounts,* one for mailing and postage services and one for other professional services, the Professional Services Contract incorporated the Postal Accounts Contract, resulting in two accounts governed by one contract. The Trustee argues that: (a) the Professional Services Contract did not integrate the Postal Accounts Contract; (b) there are and always have been *two* distinct contracts governing the two accounts; (c) the Debtors only assumed and assigned one of these contracts; and (d) a material ambiguity exists as to which contract was assumed and assigned, making summary judgment inappropriate.

Whether there is one contract or two is a pivotal issue. If only one contract exists then it was unambiguously assumed and the Defendant's Contract Assumption Defense, if successful, would bar the Trustee's avoidance action as to all payments at issue in this case. If two contracts exist, then the Court must determine which one was assumed, rendering all payments made under the *unassumed* contract vulnerable to the Trustee's avoidance claims. Put another way, the Defendant's affirmative defense is predicated on payments made under an assumed contract, and to the extent payments are made pursuant to

an unassumed contract, the defense does not apply.

■ In construing and interpreting contracts, this Court must look to state law. See *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Debtor and Defendant agreed in the Professional Services Contract that in the event of a dispute, the laws of Colorado would govern. Under Colorado law, interpretation of a written contract is a question of law. *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990). It is not sufficient that a party simply attests that two contracts were intended to be integrated, the court itself must undertake this examination. *Preslar v. Comm'r of Internal Revenue*, 167 F.3d 1323, 1330 (10th Cir.1999). Furthermore, the plain and ordinary meaning of words of the contract controls. *Cache Nat'l Bank v. Lusher*, 882 P.2d 952, 957 (Colo.1994). "The meaning and effect of a contract [are] to be determined from an examination of the entire instrument, not merely from isolated clauses or phrases." *Cooper v. First Interstate Bank, N.A.*, 756 P.2d 1017,

1020 (Colo.Ct.App.1988) (citing *Int'l Technical Instruments, Inc. v. Eng'g Measurements Co.*, 678 P.2d 558 (Colo.Ct.App. 1983)).

■ To determine if two contracts should be integrated, courts in Colorado have considered the following factors: (1) whether the contracts expressly incorporate each other; (2) whether the contracts reference each other; (3) whether the contracts have separate and distinct consideration; and (4) whether the contracts have separate and distinct performance obligations.[2]

■ The Professional Services Contract was signed on April 28, 2004. The Postage Agreement was signed in mid-August 2003. The Court therefore looks to the language of the Professional Services Contract because it was the later of the two contracts. It contains two operative clauses related to integration. The first is paragraph 3.4 of the Professional Services Contract, which states:

> **Postage Invoices:** All invoices for postage will be payable by [Debtors] upon

**2.** *Compass Bank v. Kone*, 134 P.3d 500, 503 (Colo.Ct.App.2006) (security agreement that attached and incorporated a UCC Financing Statement which described the collateral determined to constitute an integrated and authenticated security agreement); *Kunzmann v. Petteys*, 74 Colo. 342, 221 P. 888 (Colo. 1924) (finding that a stock purchase agreement and an agreement to repurchase the stock upon demand constituted a single contract because the agreements were consideration for each other); *Colorado Fuel & Iron Co. v. Pryor*, 25 Colo. 540, 544, 57 P. 51 (Colo.1898) (finding that a lease of a coal mine was severable into two distinct agreements where the consideration and performance obligations were separate and distinct); *Pappageorge v. Fed. Kemper Life Assurance Co.*, 878 P.2d 56, 60 (Colo.Ct.App.1994) (finding that a life insurance policy and a separate written agreement that provided temporary coverage under the policy did not constitute a single integrated contract where there was no

cross-referencing, and where each "policy" imposed separate and distinct coverage requirements); *Stewart v. Blanning*, 677 P.2d 1382 (Colo.Ct.App.1984) (concluding that two contemporaneously executed contracts did not constitute a single integrated contract where the two contracts were facially unrelated and contained separate and distinct consideration and performance obligations). *Cf. Breaker v. Corrosion Control Corp.*, 23 P.3d 1278, 1284 (Colo.Ct.App.2001) (finding that an arbitration clause in a sale contract did not apply to a contemporaneously executed employment contract that contained a merger clause because neither contract referenced the other and different mechanisms existed for dispute resolution under the separate contracts); *Moore v. Georgeson*, 679 P.2d 1099, 1101 (Colo.Ct.App.1983) (merger clause precluded integration of employment contract and lease when the later contract failed to reference the former).

receipt and will be subject to the provisions of the postal agreement as detailed in Exhibit C.

The second operative clause is paragraph 19, which states in relevant part:

**Entire Agreement:** This Agreement, including any documents referred to herein and attached hereto, constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior representations, understanding or agreements between the parties.... The documents referred to herein and attached hereto shall be read together with this Agreement to determine the parties' intent.

By attaching and explicitly referencing, indeed incorporating the Postage Accounts Contract in paragraph 3.4, the later Professional Services Contract subsumes the Postage Accounts Contract. Paragraph 19 expressly and unambiguously provides that the Professional Services Contract includes "any documents referred to herein and attached hereto," which included the Postage Accounts Contract.

The Colorado Supreme Court has considered the proper interpretation of an integration clause nearly identical to the one that was used in paragraph 19. In *Nelson v. Elway,* 908 P.2d 102 (Colo.1995), the parties disagreed as to whether a prior, separate "service agreement" was intended to be part of the overall Buy–Sell Agreement subsequently entered into by the parties. The *Nelson* court held that the following integration clause was a plain and unambiguous manifestation of the parties' intent "that the Buy–Sell Agreement[ ] ... constitute the entire agreement between the parties."

This Agreement constitutes the entire Agreement between the parties pertaining to the subject matter contained herein, and supersedes all prior agreements, representations and understand-ings of the parties. No modification or amendment of this Agreement shall be binding unless in writing and signed by the parties....

*Id.* at 107.

▪ Under *Nelson's* reasoning, an unambiguous integration clause precludes this Court from looking to evidence outside of the four corners of the document to determine the intent of the parties. The *Nelson* court reached this conclusion despite the fact that the *Nelson* contract did not make any express reference in the Buy–Sell Agreement to the prior service agreement. In the present case, paragraph 19 is similarly clear and unambiguous. The parties intended that the Professional Services Contract stand alone, constituting the entire agreement between them. But in addition, the Professional Services Contract expressly incorporated the previous Postage Accounts Contract into its terms. In doing so, the consideration and performance obligations of the Professional Services Contract expressly overlapped with those of the Postage Accounts Contract.

The plain language of the Professional Services Contract demonstrates that Debtor and Defendant intended that it include all provisions of the Postage Accounts Contract, *plus* the additional services to be rendered by Defendant. The Trustee's contention that there were two contracts, and material ambiguity as to which contract was intended to be assumed, fails.

**B. Mutual Exclusivity of Avoidance Powers and an Assumed Contract**

▪ The fundamental purpose of § 365 is to make the nondebtor contracting party whole upon assumption of the executory contract. Section 365 mandates the cure of all outstanding defaults, compensation for any pecuniary damages at-

tributable to the debtor's breach, and adequate assurance of future performance. 11 U.S.C. § 365(b). In other words, the nondebtor party to the contract must be assured that it will receive the "full benefit of the bargain" under the contract. The Defendant argues that § 365's purpose is directly at odds with a trustee's avoidance powers that would permit recovery of the payments made under the assumed contract. Thus, according to the Defendant, the estate cannot have its cake and eat it too. It must elect to either assume the contract or exercise its avoidance powers to recover payments under it.

▬ There is no case squarely on point in the Tenth Circuit, but a majority of the courts that have addressed this issue have recognized the Contract Assumption Defense as a complete bar to the trustee's avoidance powers. Many of these courts reason that assumption and preference powers are mutually exclusive because they are fundamentally inconsistent—that allowing a preference suit after assumption would undermine Congress' intent that a contracting party is made whole prior to being forced into fully performing.[3] The legislative history accompanying § 365 also supports this interpretation. "If the trustee is to assume a contract or lease, the courts will have to insure that the trustee's performance under the contract ... gives the other contracting party the full benefit of his bargain."[4]

*Superior Toy* illustrates the fundamental tension that arises between § § 547 and 365 when a trustee seeks to recover payments made pursuant to a contract previously assumed by the estate. There, a licensing agreement was assumed by the debtor during an attempted chapter 11 reorganization that later converted to a chapter 7 case. The chapter 7 trustee asserted a § 547 preference claim to recover amounts paid by the debtor to the defendant prior to bankruptcy. Focusing on the language of § 365 as well as the intent underlying it, the Seventh Circuit held §§ 547 and 365 are mutually exclusive remedies.

The language of § 365(b)(1) is unequivocal. A party to an executory contract must be paid all amounts due him under the contract before the contract may be assumed. In drafting § 365(b)(1), Congress went further than requiring that the trustee guarantee payment for future performance under the contract. It required that the trustee guarantee payment of all amounts owed prior to assumption. If Congress had intended to deprive contracting parties of monies they received prepetition, why would Congress require that all defaults be cured prior to assumption? ... We believe Congress passed § 365 to insure that a contracting party is made whole before a court can force the party to continue performing with a bankrupt debtor. Permitting a preference suit after an assumption order would undermine that purpose.

---

**3.** *See, e.g., In re Superior Toy & Mfg. Co., Inc.,* 78 F.3d 1169 (7th Cir.1996); *Philip Servs. Corp. v. Luntz (In re Philip Servs., Inc.),* 284 B.R. 541 (Bankr.D.Del.2002); *Seidle v. GATX Leasing Corp.,* 778 F.2d 659, 665 (11th Cir. 1985) (same holding in context of a § 1110 agreement to perform under a lease); *Alberts v. Humana Health Plan (In re Greater Southeast Comty. Hosp. Corp. I),* 327 B.R. 26 (Bankr.D.D.C.2005); *MMR Holding Corp. v. C & C Consultants, Inc. (In re MMR Holding Corp.),* 203 B.R. 605, 613 (Bankr.M.D.La. 1996); *In re Jazzland, Inc.,* 2004 WL 4945990 (Bankr.E.D.La.2004).

**4.** H.R. Rep. 95–595, at 348 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, at 6304; S. Rep. 95–989, at 59 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, at 5845.

*In re Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1174 (7th Cir.1996).

The reasoning of *Superior Toy*, mirrored in *Philip* and *Greater Southeast*, is persuasive. "The situation is exactly as if the estate entered into a new contract with the nondebtor party during the bankruptcy administration. Thus, if the estate breaches or later rejects the contract, the other party's damages will be a first priority claim."[5] Furthermore, the Debtors' estates have already been enriched by the assumption and assignment of the contract. It would be manifestly unjust to allow the estate to retain the benefit conferred by assumption and assignment, but nevertheless allow the Trustee to recover amounts that his predecessor had been required to pay under § 365.

Some of the cases addressing the interplay of contract assumption and preference liability rely primarily on a § 547(b)(5) analysis.[6] Section 547(b)(5) requires a trustee to establish that the transfer yielded the creditor a greater return on its debt than it would have received if the transfer had not taken place and it had received a distribution under a chapter 7 liquidation. Because § 365 requires the debtor to cure any default, it effectively places that creditor in a position similar to that of a fully secured creditor entitled to receive full payment on its claim. If a court calculates the hypothetical liquidation by taking into account the contract assumption, the trustee would be unable to establish this element of § 547.

The Trustee argues that the hypothetical liquidation described in § 547(b)(5) must be determined as of the petition date, rendering post-petition events irrelevant. He contends that *Superior Toy* and the other cases relied on by Defendant were erroneously decided because the contract assumption occurred post-petition. He relies on *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936), in which the Supreme Court held that "[w]hether a creditor has received a preference is to be determined ... by the actual effect of the payment as determined when bankruptcy results." *Id.* at 229, 56 S.Ct. 450. Although one court has narrowly applied the *Palmer* principle to ignore post-petition events in the hypothetical liquidation analysis, the weight of authority holds that the "hypothetical liquidation under section 547(b)(5) should not ... be conducted in a vacuum."[7] Furthermore, the Trustee overlooks the fact that the central holding in the *Superior Toy* line of cases is not predicated on the trustee's ability to meet § 547(b)(5). This line of cases relies primarily on the premise that permitting a preference suit after

---

**5.** *Preferential Transfer Liability for Prepetition Payments on an Assumed Contract or Lease: Exploring the Limits of Textualism, the Legitimacy of a Code Common Law, and an Appropriate Contractual Default Rule for the Assumption Bargain*, 24 No. 1 Bankruptcy Law Letter 1, 7 (Jan. 2004) (quoting Charles Jordan Tabb, *The Law of Bankruptcy* § 8.13, at 609 (1997)); 11 U.S.C. § 365(g)(2).

**6.** *See, e.g., In re LCO Enters.*, 12 F.3d 938 (9th Cir.1993); *Kimmelman v. Port Auth. of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311(3rd Cir.2003); *Hays v. Nano-Tex, Inc. (In re Galey & Lord, Inc.)*, 2008 WL 5140055 (Bankr.N.D.Ga.2008).

**7.** *In re LCO Enters.*, 137 B.R. 955, 959 (9th Cir. BAP 1992) (Perris, J., concurring), *aff'd*, 12 F.3d 938 (9th Cir.1993); *In re Philip Servs.*, 284 B.R. 541 (Bankr.D.Del.2002). *See also In re Galey & Lord, Inc.*, 2008 WL 5140055 (Bankr.N.D.Ga.2008); *In re MMR Holding Corp.*, 203 B.R. 605, 613 (M.D.La. 1996). *But see In re Tenna Corp.*, 801 F.2d 819 (6th Cir.1986) (in conducting hypothetical liquidation the court did not consider diminution in estate assets resulting from post-petition financing arrangement).

assumption undermines the intent and purpose of § 365.[8]

At least one court that recognizes the Contract Assumption Defense also holds that it is a bar not only to preference claims, but to all of a trustee's avoidance powers, including those found in § § 544, 548 and 549.[9] The reasoning supporting this defense applies with greater force to fraudulent conveyance claims. In this case, the Trustee alleges that the Debtor received less than reasonably equivalent value in exchange for the payments on the contract. The Court fails to comprehend, however, how the Trustee can now claim that the estate did not receive reasonably equivalent value for making payments under a contract that, presumably, was valuable enough to the estate to merit assumption and assignment. His claims under § 549 are even more problematic. Section 365 expressly addresses the post-petition relationship between parties to an assumed contract. It not only authorizes, but it *requires*, that the estate cure defaults as well as provide adequate assurance for future performance under the contract. In other words, all payments under the contract are expressly authorized by § 365 and, therefore, they are outside the ambit of § 549.

In the absence of a Tenth Circuit precedence, this Court joins with the majority of courts that recognize the Contract Assumption Defense as a complete bar to the exercise of a trustee's avoidance powers. The Court finds persuasive both lines of reasoning. Assumption under § 365 is fundamentally inconsistent with recovery of payments under the avoidance powers. And in the case of preference claims, the Trustee is unable to establish the necessary element of § 547(b)(5), despite the fact that the Court must consider postpetition events in reaching this conclusion.

## C. Waiver

■■■ The Defendant did not specifically plead the Contract Assumption Defense in its Answer. In his final argument, the Trustee asserts that the failure to plead it operates as a waiver of the defense. This presents a closer call for the Court, but on balance the Court finds under the facts and circumstances of this case that the Trustee was sufficiently apprised of this defense and suffered little or no prejudice from its later assertion.

In its Answer, the Defendant stated only general defenses. It asserted that "[t]he Complaint fails to state a claim upon which relief may be granted." The Defendant also included as a placeholder that it was "expressly reserv[ing] the right to supplement its affirmative defenses." *Id.* The Contract Assumption Defense was first articulated in Defendant's Response to Interrogatories. The Trustee asked the Defendant to identify "each affirmative defense in your Answer," including "all facts upon which you base your affirmative defense." Defendant responded that "[t]he factual basis for this affirmative defense is [*sic*] the assumption of the [contract] by the Debtor operates as a bar to each of the Trustee's avoidance claims." This response was provided to the Trustee on January 8, 2010, the same date as the discovery cut-off date.

Ordinarily, waiting to assert an affirmative defense until the close of the discovery cut-off period would work a hardship on the plaintiff. But this particular defense rests on a purely legal question and does not require any discovery. Nor has a trial date been set in this case. Under these

---

**8.** *In re Greater Southeast Cmty. Hosp. Corp., I,* 327 B.R. at 36.

**9.** *See, e.g., id.,* at 28, 31 (applying reasoning to § § 544, 547, 548 and 549).

circumstances, if the Defendant had filed a motion to amend its Answer on the discovery cut-off date to include this defense, the Court would have likely granted such a request.

The Tenth Circuit has been emphasized that:

> we must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule. [That] ultimate purpose is "simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it. When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with [the pleading rule] does not cause the plaintiff any prejudice."

*Creative Consumer Concepts, Inc. v. Kreisler,* 563 F.3d 1070, 1076 (10th Cir. 2009) (quoting *Hassan v. U.S. Postal Service,* 842 F.2d 260, 263 (11th Cir.1988)). Thus, the pleading standard is a liberal one, designed only to ensure that the opposing party has sufficient notice to prepare for trial. *Id.* at 1076. So long as that notice is achieved, the court need not become a policeman parsing pleadings for imprecise syntax or vague language.

The Trustee was put on clear notice of the Contract Assumption Defense when he received the responses to his interrogatories. He also had a full and fair opportunity to address this purely legal defense in his brief in opposition to the Defendant's motion for summary judgment. Under these circumstances, the Court finds that it is unwarranted to impose a finding of waiver on the Defendant.

## IV. Conclusion

For the foregoing reasons, the Defendants' Motion for Summary Judgment is GRANTED in favor of the Defendant and against the Trustee. The Complaint is dismissed with prejudice.